[Civ. No. 7385. Second Appellate District, Division Two.—July 17, 1930.]

In the Matter of the Estate of CHARLES W. SHIRLEY, Deceased. LYMAN B. GOFF, Appellant, v. GEORGE H. ANDERSON, Executor, etc., et al., Respondents.

Tanner, Odell & Taft for Appellant.

Frank C. Dunham and W. H. Thomas for Respondents.

THOMPSON (IRA F.), J.—This is an appeal from a decree of partial distribution. The facts are as follows: The

decedent executed his last will and testament on August 15, 1914, by which he declared his property to be his separate estate, that "no other person or persons have any interest therein except my only son and only daughter" and that he executed the instrument "for the sole purpose of having" his "property equally divided between" his "son, Lafayette Shirley, a resident of Rockford, Illinois, and" his "married daughter, Jessie C. Lake, of Rockford, Illinois, and Redondo Beach, California." He further states that the property is to be distributed to his "son and daughter or their children, share and share alike, that is to say, the said trustees are to divide the said property equally between my said son and daughter if living." Lafayette Shirley, the son, had a daughter named Mrs. Nettie Wilson. On April 8, 1926, the decedent executed a codicil by which he gave to Mrs. Wilson a one-sixth part of his estate and a two-sixths thereof to his son, to be held in trust, however, for the granddaughter, with the right on the part of the son to use the income during his life. Jessie Lake, who also had a daughter, named Frances McPhail, died on March 19, 1921, and on February 21, 1923, the testator executed an olographic codicil, which, with corrections appearing, reads as follows: "By reason of my Soninlaw Frank L. Lake pleding the statute of limitations on a Sixteen Hundred dollar promissory note for loan of $1600.00 Hundred Dollar he and his heirs and assigns are disinherited and their portion is hereby devised to my nephew Lyman B. Goff, and attached to my L. W. T. and made a part of my bequest is my wish and will on account of Lake's actions." On petition therefor by the executor and Frances McPhail, the court, over the opposition of Lyman B. Goff, ordered a partial distribution to Mrs. McPhail of $9,000.

For the sake of clarity in arriving at a conclusion as to the import of this last codicil let us put out of mind the thought that the disinheriting language which we have quoted is a separate instrument, and consider it as though it were a paragraph in the original will. Such a mental picture is consistent with the rules of construction adopted as aids in determining the intent of the testator. For example, it is said that "The Will and the codicils together constitute the testamentary disposition of the property, and are all to be considered for the purpose of arriving at the intention of

the testator" (*Estate of De Laveaga*, 119 Cal. 651, 656 [51 Pac. 1074, 1076]). And again we read in *In re Ladd*, 94 Cal. 670, 673 [30 Pac. 99, 100] : "It must be assumed that the testator, at the time of making his codicil, used the terms therein with reference to the provisions of the will as they would be construed under the facts then existing, and with a knowledge of what property the will provided that the executors 'hold' in trust, and that he intended that no further change should be made in his will than was expressly declared in the codicil. The execution of the codicil had the effect 'to republish the will as modified by the codicil' (Civ. Code, sec. 1287) as of the date of the codicil. (*Payne* v. *Payne*, 18 Cal. 302.) Its effect was not limited to a republication of clause 4, and although clause 4 is the only portion of the will which the codicil purports to modify, yet the effect of its execution was to republish the entire will, and not merely the clause so modified, 'as if the testator had inserted in the codicil all the words of the will.' (*Doe* v. *Walker*, 12 Mees. & W. 597.) The whole of the original will and the codicil are to be construed as [i]f a single instrument executed at the date of the codicil, and of which all the parts are to be construed, 'so as, if possible, to form one consistent whole.' (Civ. Code, sec. 1321.) A codicil is never construed to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil. (1 Jarman on Wills, *176.) 'The dispositions made by a will are not to be disturbed by a codicil further than is absolutely necessary in order to give it effect, and a clear disposition made by the will is not revoked by a doubtful expression or inconsistent disposition in a codicil.' (*Kane* v. *Astor's Exrs.*, 5 Sandf. [7 N. Y. Super. Ct.] 533.) 'The different parts of a will, or of a will and codicil, shall be reconciled, if possible, and where a bequest has been once made, it shall not be revoked, unless no other construction can be fairly put upon the language used by the testator.' (*Colt* v. *Colt*, 32 Conn. 446. See, also, *Wetmore* v. *Parker*, 52 N. Y. 462; *Johns Hopkins University* v. *Pinckney*, 55 Md. 365.)"

We now advert to an established rule of construction before taking up the specific words made use of by the testator in the codicil. In *Estate of McCauley*, 138 Cal. 432 [71 Pac. 512, 514], it is phrased in these words: "A codicil

does not disturb the will, except so far as it is inconsistent with it, or in terms or by necessary intendment, revokes it. As was said in the Ladd case, 'where a bequest has once been made, it shall not be revoked, unless no other construction can fairly be put upon the language used by the testator.' '' And in *Estate of Marti*, 132 Cal. 666 [61 Pac. 964, 966, 64 Pac. 1071], our Supreme Court says: ''The authorities all agree that when an absolute estate has been conveyed in one clause of a will, it will not be cut down or limited by subsequent words, except such as indicate as clear an intention therefor as was shown by the words creating the estate. Words which merely raise a doubt or suggest an inference will not affect the estate thus conveyed, and any doubt which may be suggested by reason of such subsequent words must be resolved in favor of the estate first conveyed. This rule of construction controls the rule that an interest given in one clause of a will may be qualified or limited by a subsequent clause.''

While we have thus stated the rule requiring us to resolve the doubt, in which we have been, in favor of the estate first conveyed, we deem it proper also to consider the particular words used by the testator as indicative of his intention, to arrive at which is the ultimate question in all cases involving the construction of wills. In the instant case it is agreed by all counsel that the testator had conveyed a one-half of his estate to his daughter if living and if not living to her children, employing for that purpose the word ''children'' instead of ''heirs.'' The first particular word which we must examine is ''disinherit.'' It is to be noted that the testator, who, very clearly, wrote the codicil without legal assistance, does not revoke the gift of a one-half of his estate to the granddaughter, but says ''he and his heirs and assigns are disinherited.'' Webster's New International Dictionary defines ''disinherit'' as follows: ''To cut off from, or deprive of, an inheritance or hereditary succession; to prevent, as an heir, from coming into possession of any property or right which, by law or custom, would devolve on him in the course of descent.'' In ordinary parlance when a person is disinherited he is cut off from the right of receiving that which he otherwise might have by the law of succession. The next specific words are those of ''heirs and assigns.'' By their employment to-

gether we read the mind of the testator to the effect that the word "heirs" is qualified and modified by the word "assigns," as though the testator intended to refer to those persons who should succeed to the title through his son-in-law, either by way of purchase or succession upon his death, or that the property must pass through Frank Lake. This sense is entirely consistent with the word "disinherit" and explains why the testator employed the word "children" in the will itself and made use of the phrase "heirs and assigns" in the codicil, as though recalled from a deed. It is true that the word "their," used in connection with the word "portion," apparently lends color to the argument of appellant that the testator intended to revoke the disposition made to his granddaughter, but a closer scrutiny of its context discloses that it does not have the effect argued. We think it must be conceded that the testator had in mind one of two things either disinheriting the son-in-law, i. e., cutting him off from any right which he might claim to have through his deceased wife, or of cutting off the estate conveyed to his granddaughter by the previous part of the will. In either event the word "their" is improperly used to describe the portion intended to be designated. Reverting again to the rule requiring us to resolve the doubt in favor of the estate conveyed, we are bound to conclude that the granddaughter is entitled to take under the will.

Order affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 15, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 11, 1930.

Curtis, J., Preston, J., and Waste, C. J., dissented.