[Civ. No. 2353. Fourth Appellate District.—August 18, 1939.]

In the Matter of the Estate of JOSEPH C. MALLON, Deceased. MARY KNOLL MISSIONARY SOCIETY, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Administrator, etc., et al., Respondents.

Marcus L. Roberts for Appellant.

Gray, Cary, Ames & Driscoll and Green & Morrison for Respondents.

150

GRIFFIN, J.—This is an appeal from an order construing a will, directing disposition of the property of the estate, and from an order denying a motion to vacate the judgment and order. Certain phases of this case were heretofore presented to this court for decision. (*Estate of Mallon,* 28 Cal. App. (2d) 106 [81 Pac. (2d) 992].) We need not cause this decision to become exuberant by reiteration of the salient facts there related.

The deceased left a will written entirely in his own handwriting, which reads:

"835 B Ave.,

"Coronado, Calif.

"July 1, 1936

"The following is a statement of all the personal and real property that I own. (Here follows a list of personal and real property.)

"I, Joseph C. Mallon, on this date, July 1st, 1936, hereby will and bequeath all of the above property to my sister, Mary A. Mallon, who will care for Mary L. Barrett until death shall separate them. To the survivor shall be given one half of the amount of money realized from the sale of all real property. One fourth of that amount shall be given to my niece, Mrs. James Leahy, 35 Water St., Stonington, Connecticut, and one-fourth to the Mary Knoll Missionary Society, whose headquarters are in New York State.

"Signed by myself,

"JOSEPH C. MALLON."

A previous will, dated June 8, 1934, left all of decedent's property in trust during the lifetime of decedent's sister, Mary A. Mallon. It was held on the former appeal that this previous will was revoked by the execution of the subsequent will above quoted. The trial court has now found from an interpretation of its terms and provisions that the whole of the estate of the decedent was devised and bequeathed to decedent's sister, Mary A. Mallon, absolutely. The conclusion was that the words: "I . . . hereby will and bequeath all of the above property to my sister, Mary A. Mallon," constituted an absolute bequest; that the words "who will care for Mary L. Barrett until death shall separate them" were precatory and insufficient to raise a trust; that there being an absolute bequest to Mary A. Mallon in the first sentence, this

could not be cut down by any subsequent provisions of the will.

Appellants contend that the gift to Mary A. Mallon provided for in the opening sentence of the will conveyed a life interest in all of the property of the testator, subject to a trust, the purpose of which was the care by the said Mary A. Mallon of Mary L. Barrett during their lives; that upon the death of either Mary A. Mallon or Mary L. Barrett the trust was terminated; that upon the termination of the trust created by the first sentence of the testator's will, the property was to be distributed to remaindermen, whose interest was created by the later provisions in the will, and whose interests became vested equally with those of Mary A. Mallon and Mary L. Barrett on the death of the testator. Therefore, the question for determination is whether the devisee or legatee is the sole beneficiary or, subject to her life estate, merely a trustee for others of the gift bestowed upon her; whether the wish or desire or recommendation that is expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of that party, leaving it, however, to the party to exercise her own discretion.

What words annexed to a bequest or devise will create a trust in reference to the property bequeathed or devised has been the subject of frequent discussion in the construction of wills, and it is impossible to harmonize the several decisions upon the subject. No particular form of words or conduct is necessary for the manifestation of an intention to create a trust, and section 102 of the Probate Code demands that the words of a will receive an interpretation which will give every expression some effect, rather than one which will render any of the expressions inoperative. Precatory words may or may not create a trust, according as they are used, and whether, in any particular will, they have been used for this purpose will depend upon the construction to be given to that will. In order to make Mary Mallon a trustee under the will it must appear that the testator intended to impose an imperative obligation upon her, and for that purpose has used words which exclude the exercise of discretion or option in reference to the act in question. While the desire of a testator for the disposition of his estate will be construed as

a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms. (*Estate of Marti*, 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071].) ■ It should be noted that the words of Joseph Mallon are not directed to an executor or trustee. As to the first provision, "who will care for Mary L. Barrett. . . . ", it appears to us that the language is at most a mere recital of the testator's expectation. By the use of the language above quoted, the testator merely expresses his expectation of what his sister will do. He has only stated his belief that something will be done for Mrs. Barrett by Miss Mallon. ■ It is an established rule of law that unless it appears from the whole will that an obligation was intended to be imposed, no obligation will be held to exist. (*Estate of Marti, supra.*) A bequest may be made and in such language as to admit of no doubt that the testator intended to impose an obligation upon the legatee and yet no trust may exist. The reason is that the obligation imposed does not run to the disposition of the money or property bequeathed, that is, the money or property is neither given nor received upon any obligation as to what shall be done with it. The essential element of a trust that the subject-matter of the trust (that is the money or the property) be held by the trustee for someone else, or be used for the accomplishment of some other object or objects than the personal benefit of the trustee, is absent. So here, even assuming that the language of the testator shows that he intended respondent Mary A. Mallon to receive his estate subject to a binding obligation to care for Mrs. Barrett, nevertheless he did not use any language to show that *the estate bequeathed* was to be used for such purpose. The obligation could be carried out by the use of any other funds in Miss Mallon's possession. The language used by the court in *Estate of Hamilton*, 181 Cal. 758, 764 [186 Pac. 587], is especially appropriate to the will here involved.

"As to them, the essential point is that while they will receive the money upon the obligation to offer masses as required, such obligation does not go to the use or disposition of the money."

So here, Miss Mallon receives the money for herself. The only obligation (if there was any obligation at all) was to care for Mrs. Barrett, not necessarily out of the money or

property bequeathed, but out of any money she might have. Assuming that she receives the bequest upon an obligation to care for Mrs. Barrett, ''such obligation does not go to the use or disposition of the money or property bequeathed'', and there is, therefore, no trust.

If we accept appellant's interpretation of the will, that is, that Miss Mallon held the personal property in trust for the care of Mrs. Barrett during her lifetime, on this theory Miss Mallon would not receive any beneficial interest whatsoever in the *corpus* of the property for herself during Mrs. Barrett's lifetime. In fact, she would actually be entirely disinherited unless she survived Mrs. Barrett. She was the testator's own sister, while Mrs. Barrett was only his housekeeper. Certainly, it cannot be said that the testator intended to put his housekeeper above his sister and that he intended to wholly disinherit his sister unless she survived the housekeeper. There were the closest ties of blood and long association between the testator and Miss Mallon and every reason why he should wish to benefit her personally.

Also accepting the appellant's theory of the trust as to the personal property and assuming the death of Miss Mallon prior to the death of Mrs. Barrett, the will would make no disposition of the *corpus* of the personal property for it refers only to the eventual disposition of the proceeds of the sale of the real estate. This would involve a partial intestacy. The law is too well settled to require citation of authorities that a construction preventing an intestacy is to be favored over one which results in an intestacy, either total or partial. (Sec. 102, Prob. Code; *Estate of Farelly*, 214 Cal. 199 [4 Pac. (2d) 948].)

It is to be noted that in the will which the testator executed in 1934, he expressly created a trust, named a trustee, and appointed an executrix. In *Estate of Mitchell*, 160 Cal. 618 [117 Pac. 774], the testator created a trust in an earlier will but did not carry over the same provisions into a later will. The court held that this fact was in itself proof that no trust was intended by the later document, saying at page 624:

''The fact that the testatrix made so many wills and that the one of August, 1907, disposed of one half of the residue to a trustee in trust for Lucille, showed that she had some knowledge about wills, and understood the nature of trusts and something of the forms of expression used in creating

them. So far as these facts have any bearing, they would seem to point to a design not to establish a trust in favor of Lucille, since the testatrix must have been familiar with the proper form of words to create a trust and could easily have done so if she had so desired.''

This fact was previously recognized by this court in considering the two wills involved. (*Estate of Mallon, supra,* p. 110, subd. 4.) In *Estate of Browne,* 175 Cal. 361 [165 Pac. 960], the residuary bequest was as follows:

''All the rest and residue of my property of every kind, character and nature whatsoever, whether real or personal, I give and bequeath unto my beloved son, Clarence W. Browne, save and except I desire that he pay out of said property to Miss Cora McGarvey, the sum of two hundred dollars ($200.00), and to Miss Edith Johns the sum of two hundred dollars ($200.00).''

In holding that this language did not create a trust, the court said, at pages 362 and 363:

''Clearly, the words above quoted are not sufficient to create a precatory trust in favor of the appellants. Whatever may be the rule elsewhere, 'it is the settled law in California that precatory words are not to be regarded as creating a trust unless it appear that the testator intended to impose an imperative obligation and to exclude the exercise of discretion on the part of the person to whom the recommendatory words are addressed'. . . . It is to be observed that the testator's desire is expressed not to his executor but to one of the beneficiaries under his will. Under such circumstances it may only be regarded as a mere request and not as partaking of the nature of a command.''

So here, the language which is not addressed to an executor or trustee, is insufficient to create a trust. To the same effect is *Estate of Price,* 138 Cal. App. 462 [32 Pac. (2d) 994], in which case the testatrix by will left all her property to her husband ''with the earnest request that he provide and maintain a home for my aunt''. In reversing the judgment of the trial court, which held that this language created a trust, the court said, page 464:

''It was early decided that if a mere desire be expressed, without a devise for a purpose, or if a bequest so depends upon the discretion of the general devise as to be incapable of execution without superseding that discretion, there can

neither be a trust nor a charge.'' (See, also, *Kauffman* v. *Gries,* 141 Cal. 295 [74 Pac. 846]; *Estate of Mooney,* 25 Cal. App. (2d) 481 [77 Pac. (2d) 1098]; *Estate of Logan,* 29 Cal. App. (2d) 60 [84 Pac. (2d) 245].)

Certainly, all that is expressed by the phrase ''who will care for Mary L. Barrett'' is the belief, and perhaps the hope, of the testator that Miss Mallon would so care for Mrs. Barrett. Language expressing a ''hope and belief'' does not create a trust. (*McDuffie* v. *Montgomery,* 128 Fed. 105; *Holmes* v. *Dalley,* 192 Mass. 451 [78 N. E. 513]; *Estate of Lee,* 104 Cal. App. 15 [284 Pac. 948]; *Estate of Oliver,* 21 Cal. App. (2d) 106 [68 Pac. (2d) 735]; *Estate of Farelly, supra.*) We therefore find nothing in this provision of the will creating a trust in so far as it may affect the real or personal property.

■ Approaching the second provision, we find the following language: ''To the survivor shall be given one half of the amount of money realized from the sale of all real property . . . One fourth . . . to my niece . . . and one-fourth to the Mary Knoll Missionary Society . . . '' Previously, we have not considered the effect of Probate Code, section 104 (formerly section 1322 of the Civil Code), which provides as follows:

''A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will.''

The leading case upon the construction of this section is *Estate of Marti, supra,* to which we have already referred. The authorities all agree that when an absolute estate has been conveyed in one clause of a will, it will not be cut down or limited by subsequent words, except such as indicate as clear an intention therefor as was shown by the words creating the estate. Words which merely raise a doubt or suggest an inference will not affect the estate thus conveyed, and any doubt which may be suggested by reason of such subsequent words must be resolved in favor of the estate first conveyed. This rule of construction controls the rule that an interest given in one clause of a will may be qualified or limited by a subsequent clause.

■ Appellant contends that it has a vested remainder in a portion of the *corpus* of the alleged trust. From our conclusion heretofore reached, no trust has been legally created so that the foundation for this argument in this connection fails. The words relied upon cannot be given any effect in the absence of a trust. This was established in *Estate of Goldthwaite*, 140 Cal. App. 551 [35 Pac. (2d) 1050], in which case the testator left a formal will which was admitted to probate in which his father was named as executor and practically sole legatee. Thereafter the following document was admitted to probate as a holographic codicil to the will:

"Father—If anything should happen to me . . . will you do me the everlasting favor of *giving one-half the proceeds from the sale of my house and furniture to Mary Johnson,* . . . (Italics ours.)

"SPEN . . . "

In reversing the order admitting the document to probate and holding the instrument wholly ineffective, the court said:

"The writing refers to 'one-half the proceeds from the sale of my house and furniture', but there is nothing either in the will or in the writing itself which orders, or even requests, a sale of the house and furniture, the will declaring: 'I give, devise and bequeath . . . My home and furniture . . . to my father . . . ' This is an unconditional and absolute devise of the home place to the father under the last will and testament of decedent, and the writing here involved, we construe to be only an expression of a desire on the part of decedent that his father look after the proponent."

In that case the testator's father was named executor. Here, as in the Goldthwaite case, there is nothing in the whole will which "orders or even requests a sale" of the real property. The language here can therefore be given no more effect than the similar language in the Goldthwaite case.

■ It is to be noted that it is the specific real property, not the "amount of money realized from the sale of all real property" which is devised to Miss Mallon. Therefore, the testator must have intended Miss Mallon to have physical possession and control of the property. Who, then, is the person by whom the "amount of money realized from the sale of all real property" is to be given to appellant and to the other alleged beneficiaries? Obviously, it cannot be the administrator with the will annexed, for the testator expressly

directed. him to distribute the real property itself to Miss Mallon. Likewise, it cannot be a trustee, for there is no trustee, nor even a trust. The language can only be interpreted as a request to Miss Mallon to have the property sold and distributed personally, if she should be the survivor of Mrs. Barrett, or by direction to her own executor, if she should predecease Mrs. Barrett.

In the 1934 will the testator disposed of the residue of his estate after the life tenant's death in the following manner:

"I give and bequeath to Mary L. Barrett, . . . To Mrs. . . . Leahy . . . I give and bequeath one-fourth . . . "

The testator recognized that it was he who gave and bequeathed the remainder interests to each of the various remaindermen and in each and every instance he used the precise and definite phrase "I give and bequeath". Similarly, in the 1936 will he used the phrase "I . . . will and bequeath" with reference to the absolute gift of the property which he willed and bequeathed to respondent Mary A. Mallon. We note the contrast with the language used in the balance of the will. Instead of saying "I will and bequeath" or "I give and bequeath" one-half of the proceeds of the real estate to the survivor, the testator said: "To the survivor shall be given one-half of the amount . . . " Instead of saying "one-fourth of that amount I give and bequeath to the Mary Knoll Missionary Society", the testator says, "one-fourth of that amount shall be given to the Mary Knoll Missionary Society". In other words, the testator does not give or bequeath anything to the so-called beneficiaries. He does not direct his language to his executor or to the law. He directs it simply to Miss Mallon and requests her to make the designated gifts. This case is, therefore, squarely within the rule stated in *Estate of Marti, supra,* which is quoted with approval in *Estate of Tooley,* 170 Cal. 164, at p. 167 [149 Pac. 574, Ann. Cas. 1917B, 516], as follows:

" . . . 'While the desire of the testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given in absolute terms.' "

We therefore are of the opinion that the trial court was justified in concluding that the language used by the testator was entirely insufficient to create a trust. The essential re-

quirements of a trust were not present and to hold that a trust was created would result in the virtual disinheritance of Miss Mallon, to whom the testator expressly willed and bequeathed all his property. Under the provisions of section 104, Probate Code, the absolute estate given Miss Mallon cannot be affected by the later ambiguous and doubtful language upon which appellant relies or by inference or argument from other parts of the will. The construction placed upon the will by the trial court is a reasonable one and should not be disturbed. (*Estate of Bourn,* 25 Cal. App. (2d) 590, 600 [78 Pac. (2d) 193].) This court has heretofore stated that no trust was created by the ''express provision of the testator''. The concluding sentences of the will which are directed to Miss Mallon and not to the administrator with the will annexed or to the law, do not give the appellant any interest in the testator's estate. The question whether the decedent intended to create a trust must be resolved in favor of testacy and the trial court was justified in placing the construction which it did on the disputed language of the will.

In view of this conclusion, it becomes unnecessary to review the merits of appellant's appeal from the order refusing to vacate the decree construing the will. However, a review of the affidavits and counter-affidavits on file support the action of the trial court and make it obvious that there was no abuse of discretion in denying the motion. (*Thaler* v. *Thaler,* 127 Cal. App. 28 [15 Pac. (2d) 192].)

The orders from which this appeal has been perfected are affirmed.

Barnard, P. J., and Haines, J., *pro tem.,* concurred.