[Civ. No. 14874.   Second Dist., Div. One.   July 26, 1945.]

Estate of BESSIE A. MURRAY, Deceased.   SECURITY FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Petitioner and Respondent, v. CHARLES S. SIMPSON et al., Appellants; JAMES MURRAY et al., Contestants and Respondents.

Leo E. Sievert, Howard F. Shepherd and Harry B. Ellison for Appellants.

W. P. Smith and Glenn H. Cutler for Respondents.

DORAN, J.—This is an appeal from an order settling an account in the estate of Bessie A. Murray, deceased, instructing the executor, and for a final distribution.   The error claimed by appellants, relates to the interpretation of the decedent's will,—no objection being made to the accounting and other matters referred to in the petition.   The question involved, as framed in appellants' brief, is as follows: ''Where a testatrix creates a trust and provides for monthly payments

to be made to certain beneficiaries during their lives, and later in the Will provides without equivocation that the trust should terminate five years from the date of her death and the property be distributed to certain named beneficiaries, which of the inconsistent provisions of the Will should govern?''

Bessie A. Murray died September 15, 1942, leaving a will which, after making certain specific bequests not here in question, contained the following provisions:

''Fifth: I give, devise and bequeath the residue of my estate, real and personal, wherever situated, including all failed and lapsed gifts, hereinafter termed the 'trust estate', to Security-First National Bank of Los Angeles, a national banking association, in trust, to hold, manage and distribute as follows:

''A. From the net income from the trust estate, and if not sufficient, then from the principal thereof, there shall be paid in monthly installments the following annuities *during the life of each annuitant:*

'' (1) Six Hundred Dollars ($600.00) per month to my husband, James Murray, of Altadena, California.'' (Italics added.)

Following the above quoted language, the testatrix names eight other annuitants:—an uncle, $150 a month; another uncle, $100 a month; a friend, $100 a month; $50 a month to each of four cousins, and $100 a month to a brother-in-law. The total monthly payments so provided for amount to $1,250 a month or $15,000 per year. The will further provides that ''If at the end of any month there shall not be sufficient assets to pay all of said annuitants in full, said monthly sums shall be paid in full in the order in which the annuitants are listed in this paragraph 'A'.'' Paragraph ''B'' of the will provided that upon the death of any of said annuitants, ''the right of said person to receive any part of his or her annuity shall cease.'' In Paragraph ''C'' the following statement occurs: ''This trust is a trust for maintenance, and I direct that the annuities provided in paragraph 'A' of this Article Fifth shall be paid by my Executor beginning from the date of my death and continuing until distribution of the trust estate to the Trustee.''

The question at issue, whether the annuities are to be paid during the life of each annuitant as provided in paragraph A of Article Fifth of testatrix' will, or shall cease at the end of five years from the death of the testatrix, is raised by the following paragraph, to wit:

"D. *This trust shall terminate at the expiration of five (5) years from the date of my death,* and the trust estate, and all accummulations thereon, shall be distributed as follows: . . ." (Italics added.) Then follow the names of 12 persons, mostly cousins of the testatrix, including appellants, and the share of the trust estate to be distributed to each. One of these cousins, Amelia Hetzel, is named both as an annuitant in Paragraph A(8), Article Fifth of the will, and as a residuary legatee.

It appears from the evidence that the husband of testatrix was, at the time of the trial, of the age of 64 years, and that the other annuitants were all of advanced age. Three of the named annuitants were deceased at the time of the final account and distribution. The amount of the estate at the time of this account and before distribution to the trustee, is given as $112,063.35, but as pointed out by respondents, the appraisal was based on stock market values of September 15, 1942, since which time market values have materially increased.

The trial court was of the opinion, and made its order to that effect, that it was the intention of testatrix that the monthly installments specified in the will should be paid "during the life of each annuitant" as provided in Paragraph A of the Fifth Article in the will; and that the trust should "terminate on the decease of the last survivor of the annuitants," except that if the decease of the last surviving annuitant should occur before five years from the date of death of deceased that the trust should not terminate but should continue until September 15, 1947, and be accumulated until such date and then distributed to the appellants herein or other persons of the same classification in the will.

It is contended by the appellants that, "notwithstanding the clear provision 'this trust shall terminate at the expiration of five years from the date of my death', the lower court wrote into the will a provision," to the effect that the trust should not terminate at the expiration of five years unless all the annuitants should have died within five years. In this connection appellants maintain that "It would seem reasonable that the testatrix intended to share her bounty, not only with the so called annuitants, but also with the residuary beneficiaries (some of whom are of the same relationship as the annuitants) to whom she ordered the remainder of her estate distributed at the end of five years," and state that "it is very apparent that if the beneficiaries (annuitants) lived

it would not be ten years before the entire trust estate was exhausted, with the result that the residuary beneficiaries would get nothing."

On the other hand, respondents argue that the clear and distinct bequest of annuities "during the life of each annuitant" cannot be affected by the later statement in the will that the trust "shall terminate at the expiration of five (5) years" from the date of Mrs. Murray's death. It thus appears that each party to this appeal is relying upon a different and apparently inconsistent clause in the will. No proof was offered by either party in reference to the affections or intentions of testatrix, and the only evidence in the record is that of Dr. James Murray, the husband of the testatrix, in respect to the ages of the various beneficiaries.

There is no apparent controversy concerning the general rules of construction and interpretation of wills, as set out in sections 101-126 of the Probate Code and elsewhere. Nor can there be any doubt that in this case, as in all cases, the intention of the testatrix is the controlling and paramount factor. It may be incidentally noted that, although apparently drawn by an experienced scrivener, the will, at least with reference to the controversial clauses here involved, is loosely drawn, and by reason of the inconsistencies already noticed, cannot in all its parts represent the intent of the testatrix. In other words, an ambiguity exists as to the date at which the trust shall terminate.

Reliance is placed by appellants upon the latter and underlined portion of that rule of construction found in section 103 of the Probate Code, which reads as follows: "All parts of the will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; *but where several parts are absolutely irreconcilable, the latter must prevail.*" The provision in the will here under consideration, stating that the trust "shall terminate at the expiration of five (5) years" from testatrix' death, occurs subsequent to the bequest of annuities "during the life of each annuitant," hence appellants contend that "the latter (provision) must prevail."

The above statement, it may be noted, is merely a portion of the rule set forth in section 103, and the rule itself merely one of many tenets of construction devised to give possible assistance to the courts. They are not hard and fast rules of

law but guide posts to be used in attempting to arrive at a testator's intention. They may not be blindly followed. The following quotation from Schouler on Wills (5th ed.) section 478 is, as respondents urge, especially apt: "This doctrine appears to be deduced from the principle, fair enough in the comparison of expressions of different.date, that the testator's latest expression should be preferred to all previous ones; a principle, however, which must be somewhat strained when applied to the various consecutive parts of what has been obviously shaped to stand as the one full and contemporaneous expression." The two provisions here under discussion not only occur in the same instrument but in the same part of the will, namely Article Fifth which is that portion of the testament dealing with the trust estate. And as will be noted from the California cases hereinafter cited, notably in *Estate of Shirley*, 107 Cal.App. 267 [290 P. 302] and *Estate of Marti*, 132 Cal. 666 [61 P. 964, 64 P. 1071], the courts are loath to cut down an absolute estate created in one clause of a will by reason of subsequent words found in the instrument.

Obviously, no one would seriously contend that the latter statement in testatrix' will must govern where it appears clear that such statement, standing alone, does not represent her manifest intention, for such intention, if ascertainable, must always govern. Moreover, the rule of construction argued by appellants is no more important than the other rules prescribed by the Probate Code; for example, section 104 sets forth a principle particularly applicable to the present case, namely that "A clear and distinct devise or bequest cannot be affected by any . . . other words not equally clear and distinct, or by inference or argument from other parts of the will." In the present will, the words "during the life of each annuitant," are, as respondents say, "definite, explicit and plain." Nowhere else in the will, save for the clause specifying that the trust should terminate after five years, is there any statement or intimation that the testatrix did not mean exactly what the will had said in the earlier clause, namely that the monthly payments specified were to be made "during the life of each annuitant."

Furthermore, in subdivision C of Paragraph Fifth the will states that "This trust is a trust for maintenance." It does not say "maintenance for a period of five years," and without such a qualification must, in connection with the previous phraseology "during the life of each annuitant," mean exactly

that,—namely, maintenance of the annuitants for life. The correctness of this view is strengthened when it is considered that the chief annuitant, entitled to $600 per month, is the surviving spouse, a man 64 years of age, to whom testatrix had been married "Approximately 19 or 20 years," according to the testimony. While it is quite true, as stated in appellants' brief, that "There was no evidence of the feeling of affection which the deceased had for the respective beneficiaries," offered at the trial, it is nevertheless a legitimate inference from the terms of the will itself, that as mentioned by the respondents, "The first (annuitant) was her husband, James Murray, the one closest to her in relationship and evidently the first object of her bounty, her love and affection."

There are yet other indications in the will, which, although in no way controlling, nevertheless point in the same direction; —for example, the provision contained in G of Paragraph Fifth that *"so long as my husband, James Murray, shall live* I request said Trustee to consult with and carefully consider the advice of my said husband as to any sales or purchases of trust property." The same paragraph vests the trustee with the additional power "At its option and as long as it may deem advisable, to retain any property which it may receive hereunder" for the purpose of carrying out the "express purposes of this trust and in aid of its execution and the proper administration, management and disposition of the Trust estate." As said in respondents' brief, "If there is to be no trust and no trust property after five years from the date of her death, why should she request the bank (trustee) to consult him for a longer period than five years?"

In *Estate of Shirley,* 107 Cal.App. 267, 268, 270 [290 P. 302], a will provided that property was to be distributed to testator's "son and daughter or their children, share and share alike." A codicil executed after the daughter's death stated that the daughter's husband "and his heirs and assigns are disinherited and their portion is hereby devised to" a nephew. The appellate court resolved the doubt in favor of the estate conveyed by the will provision, holding that the daughter's child was entitled to take under the will. Quoting from *Estate of Marti,* 132 Cal. 666 [61 P. 964, 64 P. 1071] the court said, " 'The authorities all agree that when an absolute estate has been conveyed in one clause of a will, it will not be cut down or limited by subsequent words, except such as indicate as

clear an intention therefor as was shown by the words creating the estate. Words which merely raise a doubt or suggest an inference will not affect the estate thus conveyed, and any doubt which may be suggested by reason of such subsequent words must be resolved in favor of the estate first conveyed. This rule of construction controls the rule that an interest given in one clause of a will may be qualified or limited by a subsequent clause.' " To the same effect and again quoting from the *Estate of Marti,* is the case of *Estate of Mallon,* 34 Cal.App.2d 147, 155 [93 P.2d 245]. In the *Estate of Marti,* 132 Cal. 666 [61 P. 964, 64 P. 1071] the will devised the residue of the estate, consisting of community property, to testatrix' wife with full power of disposition and it was held that such absolute devise was not qualified by a subsequent, independent statement, " 'Upon the death of my wife, I desire that one half of the property bequeathed to her shall be devised by her to my relatives.' "

In this connection may be noted the following statement contained in 33 American Jurisprudence, page 481, section 118: ''The question has arisen as to the duration of an interest which is given to one for life, where there is a gift over to another person upon the happening of an event which occurs during the lifetime of the first taker. The few decisions which have had occasion to deal with this problem are sharply in conflict. (See Anno. 96 A.L.R. 1347.) On the whole the tendency has been to favor the taker of the life estate in cases where the testator's language can be construed to protect such taker and does not compel a different construction.'' The annotation in 96 A.L.R. 1347, just referred to, follows the case of *Odescalchi* v. *Martin,* 96 Colo. 156 [40 P.2d 241, 96 A.L.R. 1344] where it was held that under a will creating a trust estate and directing payment of the income to one during her lifetime, upon her death to another during his lifetime, and upon the latter's death to his daughter until she attained the age of 25 years, at which time she was to be paid the principal of the trust fund, the daughter was not entitled to the corpus of the estate on attaining the age of 25 years during the lifetime of the first life tenant. While it is true, as commented on in appellants' closing brief, that the facts in the cited cases are not precisely paralleled in the case at bar, the principles enunciated in the cases, texts and annotations hereinbefore mentioned, seem directly applicable to the present con-

troversy and authority in support of the trial court's finding.

It is admitted in appellants' brief that the words "during the life of each annuitant" as used in the will, would be "sufficient, in the absence of anything else in the Will indicating a different intention, to create a life estate," but it is argued, "it is also equally apparent that the words 'during the life', in view of other language in the will, might well have been intended and, the appellants contend, were intended to describe the state or condition of the annuitant, that is, the state of being alive as conditional upon the income being paid to such annuitant for the whole five years for which the trust was to be in effect." It is therefore contended that, "since there are the two senses in which the words may have been used by the testatrix there comes into play the cardinal rule of interpretation which governs over everything, and that is, the intention of the testatrix as disclosed by the will as a whole." Unfortunately for appellants' contention, the "other language in the will," hereinbefore referred to, would seem to indicate that testatrix used the words "during the life of each annuitant," not as mere descriptive matter, as argued by appellants, but in the usual sense and for the purpose of creating a life annuity.

Appellants further maintain, "It would seem reasonable that the testatrix intended to share her bounty, not only with the so-called annuitants, but also with the residuary beneficaries (some of whom are of the same relationship as the annuitants) to whom she ordered the remainder of her estate distributed at the end of five years." In reference to this matter and in refutation of the respondents' claim that the deceased was evidently solicitous about the future support of her husband, aged 64 years, appellants call attention to the fact that in addition to the annuity provided in the will, testatrix also bequeathed to the husband a considerable amount of other property including certain mining stocks, and that the husband at testatrix' death, received other funds by way of life insurance and joint tenancy property. However, the facts mentioned in no way force a conclusion that testatrix intended the annuities to the husband and the other recipients to cease at the end of five years in contradiction to an express statement that they were to continue "during the life of each annuitant." Moreover, this theory that testatrix "intended

to share her bounty" with the residuary legatees as well as with the annuitants, completely loses sight of the nature of a residuary legatee. In the language of the Probate Code, section 161(4) "A residuary legacy embraces only that which remains after all the bequests of the will are discharged." In other words, the argument that appellants have some right to "share" the testatrix' bounty is entirely inconsistent with the code definition of a residuary legacy. The only possible right which appellants possess is to share in the residue of the estate,—if there is a residue. The fact that, because of the longevity of the life annuitants, such residuary legatees may receive little or nothing, can have no bearing on the present decision.

Finally, as was said in *Estate of Northcutt*, 16 Cal.2d 683,690 [107 P.2d 607], "the construction placed by the probate court on the terms of the will, is not unreasonable. And the rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court."

Appellants' answer to this rule of law is that the decision of the lower court is unreasonable in that it "disregarded the unequivocal language of the deceased providing for the trust to terminate five years from and after her death." Yet in the same breath appellants seek to disregard and annul the earlier provision of the will, likewise in unequivocal language, stating that the specified monthly payments shall be made "during the life of each annuitant." As already noted herein, the tendency of the courts seems to favor the taker of a life estate in cases of doubt, but regardless of such tendency an intention to create designated life annuities seems manifest in the instant case. In view of the various other provisions of the will hereinbefore referred to and all of the surrounding circumstances it cannot be said that the decision of the trial court was unreasonable or that it did not reflect the intention of the testatrix.

It therefore follows that the order appealed from should be and the same is hereby, affirmed.

York, P. J., and White, J., concurred.