[Civ. No. 7828. Third Dist. Mar. 19, 1951.]

Estate of WILLIAM E. BRODERSEN, Deceased. PRESIDIO LODGE NO. 354 et al., Appellants, v. MILDRED F. HARTTER, as Coexecutor, etc., Respondent.

Hugh K. McKevitt, Jack M. Howard, Elden C. Friel and Van H. Pinney for Appellants.

M. Mitchell Bourquin for Respondent.

DEIRUP, J. pro tem.—William A. Brodersen died on November 26, 1945. After his death two wills were produced, one dated September 11, 1939, the other September 17, 1944. Both of them were holographic. Leland B. Groezinger was named as executor in the 1939 will; in the 1944 will he and the respondent, Mildred F. Hartter, were named as co-executors. Upon the joint petition of the persons so named both of the documents were admitted to probate as the last will of the decedent. In due course of probate the respondent filed a petition for the construction of the will and for a determination of her interest in the estate. After a full hearing a decree was entered by which the trial court determined that all of the provisions in the 1939 will were superseded and revoked by the provisions in the 1944 will with the exception of legacies of jewelry and tableware, which articles were not disposed of in the 1944 will. It determined also that certain moneys in the estate were bequeathed to the respondent rather than to the appellant Presidio Lodge No. 354. The Presidio Lodge has appealed from this part of the decree. The appellants Lucile Watrous and others are persons who were named in the 1939 will as legatees and were not named as such in the 1944 will, and for that reason were precluded from participating in the distribution of the estate. They have appealed from the entire decree. The two appeals were brought here on the same record.

The 1939 will is technical in form. It begins:

"I, William E. Brodersen, over the age of twenty-one (21) years, and now residing in the City and County of San Fran-

cisco, State of California, being of sound & disposing mind and memory, and not acting under duress, menace or fraud, nor undue influence of any person whatsoever, do make, publish and declare this my last will and Testament.''

The testator then revoked "all former Wills, Codicils to Wills, and other testamentary dispositions by me made"; directed his executor to pay his debts and funeral expenses and gave directions for funeral services and for the disposition of his ashes, all under the auspices of the appellant Presidio Lodge. He declared that he was a widower and had no children. He gave to Mary E. Woodrum his personal effects, to the Oroville Public Library his books, and to Juana Gerlin his jewelry. He devised his real property to six persons, and bequeathed his stocks to Warren Zanzot. He gave cash legacies, ranging from $100 to $2,500 in amount and aggregating $20,200, to 20 persons, including all of the appellants. His will ends with the clause:

"To Leland B. Groezinger and his wife Clara C. Groezinger and to Mr. and Mrs. Raymond Zanzot, I give & bequeath the balance of my estate, share & share alike.''

The 1944 will is less technically drawn. It bears the earmarks of a will drawn by a layman who wished to make a formal will but, not having an exemplar before him, relied on his memory for the technical phrases. It begins:

"Realizing the uncertainties of life and the certainty of Death, and being of Sound and disposing mind, I hereby make, execute and sign all in my own handwriting, my last Will and testament.

"I hereby appoint as executors of this my last Will, to act *without bonds*, Miss Mildred F. Hartter . . . and also my God Son, Leland Becker Groezinger . . . to act jointly.''

In this will the testator named the undertaker and provided that the funeral should be under the auspices of the appellant Presidio Lodge and gave instructions in respect to the disposition of his remains, much as in the 1939 will, but not in the same words. He devised real property in Marin County to two of the five persons to whom he had devised it in 1939, and the wife of a third. Real property in San Anselmo he devised to the Shriners Hospital instead of the persons to whom it had been devised in 1939. He gave all of his stocks to Mildred F. Hartter instead of Warren Zanzot. His cash legacies, other than the one to Miss Hartter, aggregated $7,500

and were given to seven persons, five of whom were named as legatees in the 1939 will. This will then provides:

"I also give and bequeath to Miss Mildred F. Hartter, residing at No. 818 Steiner Street, San Francisco, California, such other stocks, bonds or money that I possess, after all the other parties mentioned in my will have been paid.

"My savings deposits are in the Anglo California National Bank at Market & Ellis St. and also at Fillmore & Geary Street in San Francisco in the Anglo California Natl Bank, also in the San Francisco Bank at Haight and Ashbury Sts. in San Francisco and the Franklin Savings and Loan Society, Cor. 6th & Market Streets in San Francisco in California.

"Any money that may remain after all of my bills have been paid and also Executors fees, I give to Presidio Lodge No. 354 Free & Accepted Masons in San Francisco California, to be used for the benefit of sick members."

The 1944 will contains no other residuary clause. It does not in terms revoke all former wills nor does it refer to any former will in any manner.

There are significant differences between the two wills. One person who was omitted as a legatee in the 1944 will was devised a larger interest in a parcel of real property. The Shriners' Hospital was also omitted as a legatee but was given considerable real estate. The Presidio Lodge was willed $500 in 1939 while in 1944 it was made a residuary legatee. Of the five persons (other than Miss Hartter) who were named in both wills as legatees only one was bequeathed the same sum of money. Two other persons were named in 1944 as legatees and 13 persons formerly named, including all of the appellants, Lucile Watrous and others, were omitted. The name of Warren Zanzot, who was given stocks and real estate in 1939, does not appear in the 1944 will. The outstanding difference between the two wills lies in the generous provision made in 1944 for Miss Hartter, who is also named as coexecutor. Her name does not appear in the 1939 will. She and the testator were very good friends prior to 1915 but had not seen each other after that time until early in the year 1943, at which time their friendship was renewed.

The estate was appraised at $49,433.45. This includes currency and securities which were in the testator's safe deposit box at the time he made his last will. The amount of the currency was $25,200, and the securities in the box were appraised at $2,501. Miss Hartter claims title to the contents of the box as a gift made to her after the execution of the

1944 will, but the validity of the gift is still to be determined in the proper court. Articles of tableware and jewelry which are not mentioned in the 1944 will were appraised at $299. The real estate was appraised at $9,000. The balance of the estate consists of stocks, bonds and money in banks.

### Appeal of Lucile Watrous and Others

The trial court found:

"That the two documents dated September 11, 1939 and September 17, 1944, respectively, and admitted to probate as the last will and testament of William E. Brodersen are distinct and separate testaments, not related by reference or otherwise, and said will dated September 17, 1944 does not refer to the earlier will dated September 11, 1939, and does not purport to and does not republish the same.

"That the said will dated September 17, 1944 is a complete, separate and substantive will and purports to and is effective to and actually does dispose of all of the property and estate of said decedent, save and except for the jewelry and tableware listed in the inventory and appraisement filed in this proceeding, and as such, and except for said jewelry and tableware, wholly supersedes and revokes said will of September 11, 1939.

"That it was the intention of said decedent, in the execution of said will of September 17, 1944, to make and publish his last will and testament and to dispose of all his property and estate and to supersede and revoke any and all earlier wills, including said will and testament dated September 11, 1939."

Pursuant to these findings it was decreed that the tableware and jewelry should be distributed to the persons to whom they were given in the 1939 will and that all of the rest of the property of the estate should be distributed pursuant to the terms of the 1944 will. The effect of the decree was to eliminate the legacies to the appellants in the 1939 will, as being superseded and revoked by the 1944 will.

Appellants contend that the established rules for the construction of wills required the court to give effect to the legacies in the 1939 will which are not inconsistent with legacies in the 1944 will. They make the further contention that the trial court was precluded by the order by which the wills were admitted to probate from finding that the second will revoked the first.

"Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument. A will is to be construed according to the inten-

tion of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible.'' (Prob. Code, § 101.)

''The words of the will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy.'' (Prob. Code, § 102.)

''Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.'' (Prob. Code, § 103.)

''The execution of a codicil referring to a previous will has the effect to republish the will as modified by the codicil.'' (Prob. Code, § 25.)

''A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will; . . . .'' (Prob. Code, § 72.)

The second will obviously is not a codicil to the first, for it does not refer to it. ■ The rule of construction which requires that several instruments of a testamentary character be read together ''like any other rule of construction, is but a guide for the purpose of ascertaining the intention of the testator. It cannot be used to inject into the later instrument terms and provisions not found in it, unless by express reference in the later instrument or by necessary implication, it appears that such was the testator's intention. It is always his intention as fairly ascertained and expressed that must govern, and the code makes the rule quoted, together with the other rules of construction, subordinate to this. . . .'' (*Estate of Bergland,* 180 Cal. 629, 632 [182 P. 277, 5 A.L.R. 1363].)

■ Where the second will is effective to dispose of the entire estate it revokes the former will even though it does not contain an express revocatory clause, but, in such a case, if it appears that there is property in the estate which can not be distributed to legatees named in the second will it must be distributed according to the terms of the former will in order to avoid intestacy. (*Estate of Marx,* 174 Cal. 762 [164 P. 640, L.R.A. 1917F 234].)

In the present case the factual situation is unusual. From the words used in the 1944 will and from its pattern and obvious purpose we are forced to the conclusion that the testator intended to leave all of his property to the legatees named in that will and to supersede (and thereby revoke) all of the provisions in the first will. In two places he denominated the document his last will, and he devised all of his real property and bequeathed all of his stocks, bonds and money to named persons. He bequeathed all other personal property of that nature to Miss Hartter "after all the other parties mentioned in my will have been paid." He did not refer to the 1939 will in any way. By no possible construction of his language could one conclude that by the term "my will" he meant "my wills" or "my will, consisting of this and the 1939 will." We have noted the manner in which he shifted his legacies and bequests around and omitted a number of beneficiaries, obviously for the purpose of making a generous bequest of stocks, bonds and money to Miss Hartter. By no possible stretch of the meaning of words can we reach any conclusion other than that he intended the beneficiaries who are named in his last will to get all of his estate.

Our conclusion is in accord with the tenets of construction that we have quoted. The primary requirement is that we ascertain from the wills what the intention of the testator was. Obviously, since the provisions in the first will and those in the second will, insofar as stocks, bonds, money and real estate are concerned, are absolutely irreconcilable, we must give effect to the latter will. (Prob. Code, § 103.)

It is true that in the second will the testator did not dispose of any personal property other than stocks, bonds and money. We are compelled to infer that the personal property that he did not dispose of was of so little importance to him (a widower) that he forgot about it. Also we must infer that he had in mind the property he had at the time he made the will and (being ill) he was not concerned about such personal property (other than of the kinds mentioned in the will) and such real property as he might possibly acquire before he died. Therefore he felt no need to dispose of such property by means of a residuary clause. As we have noted, he apparently did not have before him a form of a will to follow, and it is not surprising that he did not provide for all possible contingencies.

The executors found the two wills and presented both of them for probate, calling attention to the inconsistencies and

asking the court to admit both of them to probate and interpret them later. After a hearing, in which there was a contest as to the total revocation of the first will, the court made the following order:

"Now THEREFORE, IT IS HEREBY ORDERED that the two certain instruments dated Sept. 11, 1939 and Sept. 17, 1944, heretofore filed with the Clerk of the above entitled Court, purporting to be the last will and testament of the above named deceased, and to be construed together, be admitted to probate as the last will and testament of said deceased; and that the Court hereafter adjudicate all the rights of the devisees and legatees therein mentioned."

The trial court was necessarily compelled to admit both of the documents to probate as the last will of the testator, for in the second will he did not expressly revoke the first and apparently did not dispose of all of his property. The two documents, having been admitted to probate, would necessarily be "construed together" and the court would "adjudicate all the rights of the devisees and legatees therein mentioned" when the proper time arrived. It is of no significance that the trial judge referred to the matter of construction in the way he did. ▮ It is not the function of the trial court to construe a will in the proceeding brought for the admission of the will to probate. (*Estate of Murphy*, 104 Cal. 554 [38 P. 543]; *Estate of Cook*, 173 Cal. 465 [160 P. 553]; *Estate of Montgomery*, 89 Cal.App.2d 664 [201 P.2d 569]; *Estate of Dunn*, 32 Cal.App.2d 240 [89 P.2d 667].) ▮ If the second will expressly revokes the first or if it disposes of all of the testator's property the first must be held to be revoked and should be denied probate. ▮ But here the court could not determine from a reading of the second will whether the first will had been revoked.

In 2 Page on Wills, page 143, it is said:

"A court of probate powers has jurisdiction to pass upon the validity of a will, but not upon its construction. Whether a prior will is revoked by a later will depends, not only upon the validity of the later will, but, in many cases at least, upon its construction. If the probate court has no power to construe either will, it would seem that it ought to admit both to probate if it found that they were properly executed by a testator who had capacity to execute them, leaving the question of construction, involving revocation, for the court before which such question might be presented in litigation."

In connection with the foregoing quotation and the decisions from other jurisdictions, we must bear in mind that as a rule wills are admitted to probate in the probate court, which is usually the county court, but that contests are tried and determined in a court of general jurisdiction, such as the district court or the circuit court.

Appellants have cited many cases which are to the effect that by admitting a will to probate the court makes an adjudication that it had not been revoked and its judgment can be attacked only by an appeal or by a contest after probate. There is no question but that the trial court, in determining the matter of heirship, was bound by the order by which the 1939 will was admitted to probate. But the only effect of that order was to place before the court the 1939 will for construction at the proper time along with the 1944 will. The court did not by its order admitting it to probate purport to determine what, if any legacies in the 1939 will were superseded and thereby revoked in the later will.

Appellants cite *Deppen's Trustee* v. *Deppen*, 132 Ky. 755 [117 S.W. 352], to the point that where two instruments are admitted to probate and no appeal is taken, "both are to be considered in endeavoring to ascertain the intention of the testator." The Kentucky court therefore considered both instruments and found that the second will wholly superseded the first excepting for the appointment of the executor. And in *Dicke* v. *Wagner*, 95 Wis. 260 [70 N.W. 159, 60 Am.St.Rep. 115], the court decreed that the second will superseded the first excepting for a legacy of household furniture which was not mentioned in the second will, and was therefore distributed under the first will—a factual situation much like the one we have before us.

Appellants have cited no pertinent case in which the trial court has been held to be hampered in any way in the construction of two or more testamentary instruments by the order admitting them to probate. ■ If a will is admitted to probate, even erroneously, the court must consider it in connection with a later will. But in construing the two the court must apply the usual rules of construction in order to ascertain the true intention of the testator.

The decision in *Estate of Parsons*, 196 Cal. 294 [237 P. 744], has no bearing on the issues presented here. There a will had been presented for probate. Lines appeared on the face of the will which might or might not have been· drawn by the

testator with intent to revoke three legacies. No finding was made to the effect that the will had been partially revoked in this manner. On a petition for partial distribution it was held that the question of revocation could not be raised because it had been adjudicated in the order admitting the will to probate. The question before the probate court was whether parts of the document which was presented to the court as a will had been manually deleted, so that not the whole instrument, but the parts not deleted, constituted the will of the testator. Since it was not found that portions of the will had been deleted, the will necessarily was as originally written and executed, and the order of the court to that effect was held to be res judicata.

In the present case both of the wills were admitted to probate because they had been duly executed and the court could not ascertain from the words in the second will that the first will had been totally revoked. It was not incumbent upon the court to determine at that time what parts of the first will had been revoked and admit the rest of it to probate. The only thing it could do was to admit to probate the entire document (as it did) for interpretation in connection with the last will at the proper time.

The law is clear that in such a case as this, where a complete revocation does not appear on the face of the second instrument, the order admitting both of the instruments to probate does not affect the power of the court to determine the true intention of the testator from the two instruments at a later stage in the proceedings.

Objection is made that the findings of the trial court (which are set out in this opinion) are inconsistent in that the court found that there was an intention to revoke the first will and also that it had not been completely revoked. We think that the findings express the true facts. The 1944 will is a complete will and purports to dispose of all of the estate of the testator. He intended thereby to dispose of his entire estate and to revoke the 1939 will. The 1944 will was in fact effective for this purpose excepting for a few articles of personal property. As to those articles the 1939 will was not revoked.

### Appeal of Presidio Lodge No. 354

The portion of the will to which this appeal relates has been quoted heretofore. The contention of appellant is that the "intent of the testator was to give to appellant the bank accounts after paying executors' fees and bills therefrom,

and to respondent the securities and currency in safe deposit after paying therefrom the preceding general cash bequests.''

After making many devises and bequests the testator gave to respondent ''such other stocks, bonds or money that I possess, after all the other parties mentioned in my will have been paid.'' He named the banks in which his savings were deposited and then gave to appellant ''any money that may remain after all of my bills have been paid and also Executors fees . . . to be used for the benefit of sick members.''

At the time of his death the testator had in the bank accounts $11,817. He had currency amounting to $25,200 and stocks appraised at $2,501 in a safe deposit box which are now claimed by respondent as a gift. He also had other securities appraised at $620.

Appellant contends that in the legacy to respondent the testator had in mind only the contents of his safe deposit box; that by the word ''money'' in that bequest he meant only the currency in that box; and that all of the money legacies were to be paid out of the currency in the box and respondent was to receive the rest. On the other hand, it contends that the word ''money'' as used in the bequest to the Presidio Lodge referred to all of the money in the banks, out of which the debts and executors' fees were to be paid and the balance distributed to the Presidio Lodge.

Appellant contends that by such a construction of the will all the terms are given effect, while under respondent's construction the bequest of the residue of *money*, after all of the money had been given to respondent, is meaningless. The trial court, however, found that the legacy to appellant ''was intended by the testator to be and is merely a residuary legacy and was intended by the decedent to take effect only in the event of the lapse of any of the general legacies of money made and provided for in said will of September 17, 1944, including that to petitioner Mildred F. Hartter aforesaid. That decedent knew and understood that if a legatee dies during the lifetime of the decedent, the testamentary disposition to such legatee would fail.''

The rules of construction of wills are not of much help to us in determining what the testator intended. As was said in *Estate of Lawrence,* 17 Cal.2d 1, 6 [108 P.2d 893]:

''In the construction of wills the paramount rule, to which all others must yield, is that a will is to be construed according

to the intention of the testator, as expressed therein, and this intention must be given effect as far as possible. [Citing cases.]

"Of course, as is stated in the case of *Estate of Wilson, supra* [184 Cal. 63] at page 68 [193 P. 581] : 'Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills.' "

After considering carefully the theories advanced by appellant and respondent, we have concluded that the construction given to the legacies by the trial court is correct. A will should be given effect according to the meaning of the words that are used, giving to them their ordinary meaning. In the case of uncertainty as to the meaning of the words that were used, extrinsic evidence may be resorted to in order to resolve the ambiguity. But in this case, in order to accept appellant's theory, we should have to strike from respondent's legacy the word "money" (which in ordinary usage includes money in bank) and, in effect, redraft a portion of the will to make it provide that the testator gave to respondent "such other stocks, bonds or *currency* that I possess *in my safe deposit box*, after all the other parties mentioned in my will have been paid *out of the currency in the box*." In this manner we should limit the meaning of one word which is used in the will and add other words which are not in the will, and also have the testator fail to make any bequest of the stocks and bonds which were not in the safe deposit box.

A theory which does not do violence to the words actually used is that the testator, after giving money and land to all the other parties named in the will, intended to give all the rest of his money and all of his stocks and bonds to the respondent. But, having a recollection that a formal will contains a residuary clause to serve as a catch-all, and feeling that there might be some money in the estate that he had not disposed of as of the time of his death, he wrote the residuary clause in favor of the appellant, giving it any "money that may remain . . ." as contrasted with giving to respondent "such . . . money that I possess." The legacy to respondent is clear and distinct and cannot be held to yield to the residuary legacy to the appellant, which is less positive. (*Estate of Mallon*, 34 Cal.App.2d 147 [93 P.2d 245] ; *Estate of*

*Murray,* 70 Cal.App.2d 300 [160 P.2d 880].) Our conclusion is that the testator intended to leave to respondent all of his money and all of his stocks and bonds after the payment of the other legacies.

Decree affirmed, without costs.

Adams, P. J., and Van Dyke, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 17, 1951.