[S. F. No. 725.   Department One.—January 21, 1898.]

In the Matter of the Estate of JOSE DE LAVEAGA, Deceased. MARIA JOSE CEBRIAN et al., Appellants, v. A. G. M. DE LAVEAGA, Respondent.

Construction of Will—Substituted Legacy—Incidents and Limitations of Original Legacy—Death of Legatee—Codicil—Reference to Original Bequest.—One of the rules for the construction of a will is that a substituted or additional legacy, although not so expressed in the testamentary instrument, is *prima facie* payable out of the same funds and subject to the same incidents and conditions as is the original legacy, irrespective of whether the result is or is not advantageous to the legatee; and this rule is to be applied where a legacy lapsed through the death of the legatee prior to the death of the testator, is bequeathed to a substituted legatee, in a codicil, if nothing appears from the language used in the codicil, or from the application of other recognized rules for the construction of wills, to indicate that the testator intended a substantive and independent

bequest; and where the amount of the legacy is not specified in the
codicil, otherwise than by reference to the original will, it cannot
be so considered. ·

ID. — LAPSE OF TIME IMMATERIAL — LEGACY PAYABLE OUT OF PARTICULAR
PROPERTY.—The rights of a substituted legatee named in a codicil are
not enlarged by lapse of time after the execution of the will estab-
lishing the original legacy; and where the original legacy is pay-
able only out of the proceeds of sale of a particular piece of land,
the substituted legatee is limited by the condition attached to the
original legacy, notwithstanding the lapse of several years between
the execution of the will and that of the codicil.

ID.—REVOCATION OF LIFE ESTATE BEQUEATHED TO SUBSTITUTED LEGATEE.—
The fact that a life estate in another parcel of land, before devised
to the substituted legatee, was revoked, and devised to another
person, cannot affect or enlarge the rights of the substituted legatee,
where the language used does not indicate that the legacy was given
in lieu of the life estate.

APPEAL from an order of the Superior Court of the City
and County of San Francisco, directing payment of a legacy.
J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Timothy J. Lyons, and Van R. Paterson, for Appellants.

J. J. Dwyer, for Respondent.

HARRISON, J.—-The will of the above-named decedent,
bearing date February 1, 1886, and five codicils thereto executed
by him at various dates thereafter—the last bearing date April
12, 1894—were admitted to probate in the superior court for
the city and county of San Francisco, and letters testamentary
issued to the executors named therein. In the original will the
testator made certain pecuniary bequests, and by codicils there-
after made, the payment of all his money bequests was charged
exclusively upon a certain rancho in San Benito county. One of
these money bequests was a legacy of twenty thousand dollars
given to William Brodersen, who died in the lifetime of the
testator, and in his last codicil the testator made the following
provision: "The amount I did bequest to my friend W. Broder-
sen, now deceased, I now desire, or rather ordain, be given to
the young man, J. M. Laveaga, to whom I left my ranch in this
state of Sinaloa, called Labor, but do so now no more, and I do

bequest said ranch to my cousin, Braulio Laveaga of San Dimas, Mexico." The legatee thus named is the respondent herein, and was formerly known by the name of J. H. Dohrmann, and in the original will the testator gave to him, "if he takes the name of Laveaga, my ranch in Mexico, Sinaloa, called La Labor, and all my rights and interest to lands adjoining, during his life, in trust only for his first male issue born in lawful wedlock, and, if none, then," etc. The money bequests made by the testator in his original will amounted to about two hundred and thirty thousand dollars, and the sale of the rancho out of whose proceeds their payment was to be made yielded to the estate only about ninety-eight thousand dollars. The respondent made application to the superior court for an order directing the executors to pay him the sum of twenty thousand dollars as the amount of said legacy, to which opposition was made by the executors, and also by certain heirs at law of the testator, the appellants herein, upon the ground that, as the property which the testator has exclusively charged with the payment of his money bequests was insufficient therefor, the applicant was entitled to only his proportion of that fund. The court, however, held that the legacy was a charge against the general assets of the estate, and made its order directing ·the payment to him of the sum of twenty thousand dollars. From this order the present appeal has been taken by the aforesaid heirs at law.

The real issue between the parties upon this appeal is, whether the legacy to the respondent is an independent bequest, or whether it is merely a substitute for the legacy previously given to Brodersen.

One of the rules for the construction of a will is that a substituted or additional legacy is *prima facie* payable out of the same funds and subject to the same incidents and conditions as is the original legacy; irrespective of whether the result is or is not advantageous to the legatee. (Hawkins on Wills, *306; Williams on Executors, *1162.) Mr. Redfield states the rule as follows (2 Redfield on Wills, *447): "Substitutionary legacies, that is, where legacies are subsequently given to come in the place of others given before, either in a former will, or where the substitutionary legacies are given in a codicil executed at a later date than the instrument by which the legacies

were given in the first instance—in all cases such substitutionary legacies, unless there is something in the terms used or the circumstances attending the substitution to the contrary, will have all the incidents, conditions, and limitations attaching to the original legacies." Thus in *Leacroft v. Maynard*, 3 Bro. Ch. 233, the testator gave several legacies which he directed to be raised out of his real estate; among others, one of a thousand pounds to a hospital, which by the statute of mortmain was void. By a codicil he revoked this legacy, and instead thereof gave five hundred pounds to another hospital, without mentioning any source from which it was to be paid. It was contended that, as this legacy was given generally and without any limitations, it was payable out of the personal estate, but Lord Thurlow held that, as the codicil did not purport to change the fund designated in the will for the payment of legacies, it was void equally with the original legacy. In *Cooper v. Day*, 3 Meriv. 154, the testator, by a codicil, expressly revoked a legacy which in his will he had directed to be paid free of all legacy duty, and gave in lieu thereof a legacy of a greater amount without any provision respecting the legacy duty. The latter was held to be a substituted legacy, and exempt from legacy duty. The same ruling was made in *Earl of Shaftesbury v. Duke of Marlborough*, 7 Sim. 237, the vice-chancellor saying: "When the thing bequeathed by the codicil is given as a mere substitution for that which is bequeathed by the will, it is to be taken with all its accidents." (See, also, *Bristow v. Bristow*, 5 Beav. 289; *Fisher v. Brierly*, 30 Beav. 267; *Johnston v. Earl of Harrowby*, 1 De Gex, F. & J. 183.) In *Condict v. King*, 13 N. J. Eq. 375, certain parcels of land had been devised to the testator's grandson, with a limitation over to his daughters. The testator afterward sold the land, and by a codicil to his will bequeathed to the grandson a bond and mortgage taken for the purchase money in lieu of the land, but without any limitation thereof over to the daughters. The court held that the bond and mortgage were given as a mere substitution for the land, and that the executors of the grandson must account therefor to the daughters, saying: "The fact that there was an ademption of the gift by a sale of the land before the date of the codicil does not change the substance of the thing. He gave the bond and mortgage as a sub-

stitute for the land which was devised and subsequently sold by
the testator. Where the legacy is given as a mere substitute for
another, the substituted gift is subject to the incidents of the
original, although not so expressed in the testamentary instru-
ment." (See, also, *Barnes v. Hanks*, 55 Vt. 317; *Snow v. Foley,*
119 Mass. 102; *Warwick v. Hawkins*, 5 De Gex & S. 481.) The
rule is established for the purpose of carrying into effect the in-
tention of the testator, and is employed for that purpose in con-
nection with other rules of construction. Unless it appears
from the language used in the codicil, or from the application of
recognized rules for the construction of wills, that the testator
intended by the codicil to make a substantive and independent
bequest, the rule is to be applied. The limitations and condi-
tions which he affixes to the original bequest are presumed to be
intended by him to follow it, irrespective of any change in its
amount, or in the person to whom it is given. In the absence of
some affirmative indication to the contrary by the language used
for the later bequest, it will be deemed merely substitutionary
and subject to all the incidents of that for which it is substituted.

The omission by the testator in the present case to specify the
amount of the legacy to the respondent, and the reference made
by him to the will for the purpose of determining this amount,
takes from it the character of a substantive and independent
legacy. He says: "The amount I did bequest to my friend, W.
Brodersen, now deceased, I desire or rather ordain be given" to
the respondent. The testator did not bequeath to the respond-
ent any other or greater sum than "the amount which I did be-
quest" to Brodersen. Instead of saying "the sum of money
named in my bequest to Brodersen," he carefully limits the leg-
acy to him to the "amount" which he had bequeathed to Brod-
ersen; and also, instead of saying "the amount of the legacy to
Brodersen," he says the amount "which I did bequest" to Brod-
ersen. The respondent is entitled to only the amount which had
been bequeathed to Brodersen, and this amount is to be ascer-
tained from the terms of the will in which it is given. By the
terms of the will the "amount" of the legacy to Brodersen is
made contingent upon the proceeds of the sale of the rancho in
San Benito county. It is only such an amount as Brodersen
would have received had he continued to be the beneficiary of

the legacy that the testator gives to the respondent, and that amount was indefinite and contingent upon the amount of the fund from which it was to be paid. In *Appeal of Buehler*, 100 Pa. St. 385, the testator in his will directed the residue of his estate to be divided equally among his children, with the proviso that there should be deducted from the share of each the amount of such advances as might have been made to him. He afterward by a codicil revoked this devise, so far as it applied to one of his sons, and gave the share of that son to his daughter in law. The court held that she was a substituted legatee for the son, and entitled to only so much of the estate as the son would have received, and should receive only such portion of a full share of the estate as would remain after deducting the advancements made to the son.

The rights of the respondent are not enlarged by the fact that the legacy is contained in a codicil executed several years after the will. The will and the codicils together constitute the testamentary disposition of the property, and are all to be considered for the purpose of arriving at the intention of the testator. In *Tilden v. Tilden*, 13 Gray, 103, the testator gave to one of his daughters, so long as she remained unmarried, the use of a portion of his dwellinghouse, and gave the residue of his estate to his son, upon the condition "that he shall in all respects comply with what is enjoined upon him in this my last will and testament"; and, if he did not so comply, the estate so given him should be equally divided between the daughters of the testator. By a codicil, executed twenty-two years afterwards, the testator gave to his daughter the use of other lots, and directed the son to keep in good repair that part of the house of which the use had been devised to the daughter. There was no penalty or forfeiture named in the codicil for a failure on the part of the son to keep the house in repair, but the court held that the devise of the property to him in the original will, upon the condition that he should comply with what was enjoined upon him therein, included also what might be enjoined upon him by any codicil, and that his failure to repair the house after it had been destroyed by fire operated as a forfeiture of his estate, saying: "A codicil duly executed is an addition or supplement to a will, and is no revocation thereof, except in the precise degree in

which it is inconsistent therewith, unless there be words of revocation." (See, also, *Estate of Ladd,* 94 Cal. 670.) By the second and third codicils to his will the testator charged the rancho in San Benito county exclusively with the payment of his money bequests, and by his third codicil he recites and ratifies this provision of the will, and, as there is no revocation of this provision in either of the subsequent codicils, it must be held that his intention that the Brodersen legacy should be paid only out of the proceeds of the rancho extended also to the provision made for the respondent in the last codicil.

This conclusion is also corroborated by the internal evidence of the will itself. On the day that the testator executed the will he left San Francisco for Mazatlan. It is evident that his mind was occupied with the testamentary disposition of his property thus made, for it appears that three days after the execution of the will, while on this voyage to Mazatlan, he made a codicil materially affecting its provisions, so that the two instruments thus executed so near each other may be regarded as fully reflecting his views at that time. It is evident from the provisions of these two instruments that the scheme of his will was that only the proceeds of his San Benito ranch should be employed in the payment of whatever money bequests he might make, and that his lot on Market street in San Francisco, together with the residue of his estate, should be appropriated to a specific charity. The other portions of his will are devoted to a disposition of his property in Mexico, and to certain specific bequests of real and personal property in California. In the several codicils subsequently made by him this scheme is preserved—the changes made thereby being explanatory or correctory of the original will, in some instances revoking previous bequests or substituting other bequests for property which he had specifically devised, but had afterward disposed of—and he also makes disposition of property which had been subsequently acquired by him. By his original will he made a specific devise of a certain lot of land in Santa Cruz, and in his fourth codicil, after reciting that he is about to sell this lot, he gives to this devisee the sum of five thousand dollars in lieu thereof. In one of his codicils he made a specific devise of a lot on Coronado Beach, in San Diego county, and in the same codicil as the

above, after reciting that he had since sold this lot, he directs that his legatee receive "from my estate" the sum of three thousand dollars. It is evident that he intended these legacies to be substituted for the property previously given to the same legatees. When Balthasar Hefti, to whom he had given twenty thousand dollars, died, he revoked the legacy to him, without making any other disposition thereof in its place; but upon the death of Brodersen, instead of revoking the legacy to him, he directs that the "amount" which he had bequeathed to him be given to the respondent. In the second codicil he made certain additional money bequests, but in the next codicil, made only four days thereafter, he expressly confirmed his declaration that all money bequests should be paid out of the San Benito rancho, and in none of the subsequent codicils is there any revocation of this provision, or any language implying an intention to revoke the limitation thus created.

The language used by the testator in giving the amount of the Brodersen legacy to the respondent does not indicate that it was given to him in lieu of the life estate in the rancho in Sinaloa previously given to him. That bequest was expressly revoked, and the testator made an entirely different disposition of the rancho, while the bequest of the Brodersen legacy is in terms which clearly indicate his intention merely to substitute the respondent as its recipient in the place of Brodersen.

The order is reversed.

Van Fleet, J., and Beatty, C. J., concurred.