[Civ. No. 25118. Second Dist., Div. One. Apr. 17, 1961.]

Estate of RAY G. HOLMES, Deceased. GEORGE C. HEATH et al., Appellants, v. IZORA H. PFLUG, Respondent.

Cavalletto, Webster, Mullen & McCaughey and George D. McKaig for Appellants.

Schramm, Raddue & Seed and Edward W. Schramm for Respondent.

FOURT, Acting P. J.—This is an appeal from a decree which determined the interests in the above-entitled estate.

Ray G. Holmes, hereinafter referred to as decedent, signed a document consisting of nine typewritten pages, dated March 22, 1956, entitled "Last Will and Testament of Ray G. Holmes" and such document will be hereinafter referred to as the March instrument. It was obviously prepared by someone who was familiar with the drafting of wills and trusts. The cover or backing of that instrument sets forth thereon the following: "Last Will and Testament—Ray G. Holmes—Dated March 22, 1956—Elbert L. Mikesell, Attorney at Law, Grants Pass, Oregon." By such March instrument the decedent generally devised certain designated property located in California to the Bank of America in trust and generally provided therein for three income beneficiaries (his mother, a cousin and a niece). The instrument also provided for five remainder beneficiaries who were named and further, in legalistic language, revoked any and all other wills, codicils or testaments theretofore made.

In paragraph "Second" of the March instrument certain mentioned properties supposedly in Ventura County (the property was actually in Santa Barbara County) were given to the Bank of America in trust and in paragraph "Third" certain other property was also given to the bank in trust. There were no other specific gifts, devises or bequests. Paragraph "Fourth" contains the plan, uses and purposes of the trust and provision is made for the three income beneficiaries, namely, the mother, a cousin and a niece of the testator. The instrument also provides for five named remainder beneficiaries who are to share equally in the distribution of the

principal and the remaining income of the trust after the death of the last survivor of the three income beneficiaries.

On December 31, 1957 the decedent, on the reverse side of what appears to be a carbon copy of the typewritten part of page nine of the March instrument, executed a codicil, holographic in form, as follows:

"Date December 31st 1957

Time 9:45 A M.

Name of Last Beneficiary

IZORA H. PFLUG

Izora H Pflug

Knowing to be my wife after my divorce is final— Aug 1—1958 To the law of God *I will all my property & Security to said person Izora H. Pflug*

Written this Time 9:57 A M

Ray G Holmes" (Emphasis added.)

It is to be noted that apparently decedent had possession of a carbon copy of the March instrument backed with a blue cover upon which there was printed "Elbert L. Mikesell, Attorney at Law, U. S. National Bank Building, Grants Pass, Oregon." Several of the pages (namely pages 1, 2, 3, 4 and 9) show cross-outs and words written in the margin. The court in a previous proceeding admitted the two written instruments, namely the instrument of March 22, 1956, and the codicil bearing date of December 31, 1957, heretofore set forth as the last will and testament of Ray G. Holmes. The order admitting will to probate and for letters testamentary was signed on May 5, 1958. No mention is made in that order of the first eight pages of what appears to be the carbon copy of the will with the notations and cross-outs written thereon. In fact, the court in a proceeding at a later date, ordered in effect that the first eight pages of the copy of the will were not to be a part of the record on appeal.

The only question before the court at the time of the hearing on the petition for probate of the formal will (which petition represented that the will consisted of the two documents heretofore mentioned) was whether the documents constituted a will. It is apparent that the two documents were admitted to probate because both had been duly executed, and the codicil as the later instrument contained no express revocation clause in indication of the testator's intent that no effect was to be given to the earlier instrument. (*Estate of Brodersen,* 102 Cal.App.2d 896, 906 [229 P.2d 38].)

Nothing was before the court with reference to the construction of a will, if any, nor were inconsistencies, if any, in the disposition of any property considered. That procedure was proper and that determination became final without objection or contest. (See *Estate of Murphy*, 104 Cal. 554, 566 [38 P. 543]; *Estate of Salmonski*, 38 Cal.2d 199, 207 [238 P.2d 966]; *Estate of Sargavak*, 41 Cal.2d 314, 317-318 [259 P.2d 897].)

The executor Bank of America filed a petition for a decree to determine the interests in the estate and the matter came on to be heard on April 5, 1960. The respondent moved the court to exclude all extrinsic evidence with reference to the March instrument and codicil upon the ground that the intent of the decedent was plain; that the will and codicil clearly expressed the testator's intent. The motion was granted and on April 7, 1960, a decree determining the interests in the estate was signed. The judge in effect ruled that the codicil superseded and revoked the dispositive provisions of the March instrument, that the preamble and clauses "First" (payment of debts), "Fifth" (payment of estate and inheritance tax), "Sixth" (noncontest provision) and "Eighth" (appointment of executors) of the March instrument remained in full force and effect and that respondent was entitled to distribution of the entire estate.

The appeal is from the order and judgment thus made.

The sole question of any consequence is: Did the court err under the circumstances in excluding all extrinsic evidence?

Appellants assert that the intentions of the testator cannot be declared with certainty from an examination of the face of the instruments admitted to probate; that evidence should have been introduced with reference to the facts and circumstances surrounding the execution of the testamentary documents.

Probate Code, sections 102, 103, 104 and 105 are herein set forth.[1]

---

[1]Section 102: "The words of a will are to receive. an interpretation which will give to every expression some effect rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."

Section 103: "Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one

The appellants argue that it is uncertain what the deceased meant by the use of the words "Last Beneficiary" in describing Izora H. Pflug, and that the phrase "knowing to be my wife . . ." is ambiguous and further that it cannot be determined what the deceased meant by the use of the words "to the Law of God."

No offer of proof was made to the court by the appellants even though apparently the respondent requested at the time of hearing in court that a statement be made by appellants with reference to such proposed evidence.

Respondent relies heavily upon the *Estate of Sargavak,* 41 Cal.2d 314 [259 P.2d 897] and *Estate of Salmonski,* 38 Cal.2d 199, 204 [238 P.2d 966]. In *Estate of Salmonski,* which involved the construction of two testamentary documents (one a formal typewritten will and the other a handwritten codicil) as in the present case; the codicil in *Salmonski* read as follows:

" 'Sacramento, Calif.

June 17, 1946.

" 'Dear Mrs. Bardzinski.

" 'In case of my death kindly sell the stocks and devide everything that belongs to me between yourself and Mrs. Leocadia Butkin.

" 'This is my last wish.

Your friend

Walter Wladyslaw Salmonski' "

At the time of the hearing a motion was made for an order submitting the matter on the pleadings and papers on file upon the ground that no other evidence, oral or documentary, was admissible. The motion was granted. The court in effect held that there was no uncertainty in the words of

---

consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.'·

Section 104: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."

Section 105: "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."

either the will or the codicil, that the codicil was a later testamentary disposition and by its terms adequate to dispose of the estate and ordered that Mrs. Bardzinski and Mrs. Butkin take one-half each of the estate. ▇ The court said at page 209 in the Salmonski case:

"In the interpretation of wills, ascertainment of the intention of the testator is the cardinal rule of construction, to which all other rules must yield. (Prob. Code, § 101; *Estate of Lawrence*, 17 Cal.2d 1, 6 [108 P.2d 893].) ▇ In the process of arriving at that intention, different parts of the will are to be harmonized if possible—endeavoring to give expression to all the words of a will (Prob. Code, § 102), referring to other parts of the will to clear up any doubt or uncertainty that may appear with respect to any single part, and construing all parts in relation to each other so as, if possible, to form one consistent whole but 'where several parts are absolutely irreconcilable, the latter must prevail.' (Prob. Code, § 103; *Estate of Moorehouse*, 64 Cal.App.2d 210, 215 [148 P.2d 385].) ▇ All instruments constituting the testamentary disposition must be 'construed together as one instrument' (Prob. Code, § 101), but the later executed document as the testator's last expression must control where it makes a clear and distinct gift of property wholly irreconcilable with a dispositive provision in the prior document. (*Estate of Mallon*, 28 Cal.App.2d 106, 110 [81 P.2d 992].) ▇ A clear and distinct devise or bequest cannot be affected by inference or arguments from other parts of the instrument. (Prob. Code, § 104; *Estate of Moorehouse, supra*, 64 Cal.App.2d 210, 215.)

"Manifestly here, the dispositive provisions of the letter or codicil stand in sharp contrast with those of the formal will."

The first document was in each case clear in all its terms that it disposed of the entire estate. The second document in each case is ". . . equally clear and adequate in disposing of the entire estate but in a manner contrary to and destructive of the dispositive provisions in the formal will." [P. 210.]

Appellants in the case before us did not represent to the court what they did believe the will meant and, as heretofore stated, offered no proof with reference thereto.

In the present case the testator by the words "I will all my property & Security to said person Izora H. Pflug" intended to make a substantive and independent bequest. (*Estate of De Laveaga*, 119 Cal. 651, 655 [51 P. 1074].)

292

In *Estate of Salmonski,* 38 Cal.2d 199, 210-211 [238 P.2d 966] it is stated:

''While the will and codicil together constitute the decedent's last will in testamentary disposition of his estate, they will not be regarded as a single instrument and as if both had been executed at the time of making of the codicil where the manifest intention of the testator requires otherwise. The mere making of a codicil gives rise to the inference of a change of intention, a distinguishable circumstance which does not enter in the construction of a single document constituting the decedent's will, so that where there are any genuine inconsistencies between the two instruments, the codicil, as the latest expression of the testator's wishes, must be given precedence. (26 Cal.Jur. § 143, pp. 809-810; 57 Am.Jur. § 608, p. 416; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 215.)''

The decedent in our case made a formal will indicating consultation with and guidance of counsel. About one year and nine months later he made out the codicil and by it he completely changed the dispositive provisions of the formal will. As said in *Estate of Salmonski* at page 211:

''There is not here a single testamentary act covering both will and codicil, but two distinct testamentary acts occurring at different times, the later making no reference to the earlier bequests but consisting in terms of an unqualified and unconditional disposition of the entire estate.''

It does not appear clearly just why the testator changed his mind and with that we are not particularly concerned; suffice it to say, he did change his mind and made a totally dissimilar disposition of his estate in clear language. There is no suggestion that he intended that the absolute terms of the bequest in the codicil should be subject to any conditions of the formal will. Again, as stated in *Estate of Salmonski* at pages 211-212:

''While the two documents should be read together in the sense that each should be considered in the light of the other, and their terms harmonized where possible, that is a very different thing from changing the express terms of the later codicil by importing conditions into it without its containing express warrant therefor. . . . Construing the two documents together as the decedent's 'last will,' the dispositive provisions of the codicil appear last in the will, they are absolutely irreconcilable with the provisions favoring appel-

lants, . . . and being later in time and place, they take precedence.''

Counsel for appellants at the oral argument made reference to the fact that if the codicil were to prevail as interpreted by the trial judge, the mother of decedent would be deprived of an interest in the estate of her son. This court, pursuant to the Rules on Appeal, ordered the original superior court file up for consideration. We note from the file, for what it is worth, that the mother and Izora Pflug have entered into an agreement and the same has been approved by the trial judge with reference to all matters having to do with the disposition and assets of the estate. In any event the law is clear as stated:

''Appellants cite the settled rule that if there is any doubt or uncertainty as to the testator's intent, an interpretation will be adopted which prefers his natural heirs as against strangers (*Estate of Norrish,* 135 Cal.App. 166, 169 [26 P.2d 530]; *Estate of Boyd,* 24 Cal.App.2d 287, 289-290 [74 P.2d 1049]). However, such principle of construction cannot alter a clear and positive bequest in expression of the testator's purpose (*Estate of Watts,* 179 Cal. 20, 23 [175 P. 415]), for he 'may transmit without regard to moral or natural claims upon his bounty.' (*Estate of Moorehouse, supra,* 64 Cal. App.2d 210, 216.)'' (*Estate of Salmonski, supra,* 38 Cal.2d 199, 213.)

 The rule with reference to the matter of introducing evidence of the circumstances attending the execution of the two testamentary documents is as follows:

''Assuming that this contention may now be considered without there having been made in the trial court or on this appeal some statement of the evidence upon which appellants would rely, the situation presented here does not appear to be one which would authorize the taking of testimony as an aid in ascertaining the testator's intent. When an uncertainty arises upon the face of a will as to the meaning of any of its provisions, the testator's intent is to be ascertained from the words of the will, but the circumstances of the execution thereof may be taken into consideration, excluding the oral declarations of the testator as to his intentions. (Prob. Code, § 105; 57 Am.Jur. § 1040 et seq., p. 674 et seq.; *Estate of Bourn, supra,* 25 Cal.App.2d 590, 602 [78 P.2d 193]; *Estate of Mallon, supra,* 28 Cal.App.2d 106, 110; *Estate of Moorehouse, supra,* 64 Cal.App.2d 210, 216.) But 'where the intent is plain' from the words used, 'the duty of the

court is to declare that intent, without regard to the consequences.' (*Estate of Spreckels*, 162 Cal. 559, 561 [123 P. 371]; see 26 Cal.Jur. § 200, p. 884.)'' (*Estate of Salmonski*, 38 Cal.2d 199, 213-214 [238 P.2d 966].)

In *Estate of Sargavak*, 41 Cal.2d 314 [259 P.2d 879], the court had under consideration an appeal from an order in proceedings to determine heirship. Mrs. Sargavak had made a witnessed will in 1945 in which she named her heirs as legatees. At the time of the writing of the Supreme Court opinion above cited, that will had not been finally admitted to probate. Shortly after the 1945 will was offered in probate a holographic document dated in 1946 was offered as a codicil to the 1945 will. The dispositive part of the codicil read as follows [p. 316]:

''She leaves everything she has to her Boy Sam Mahdesian & her *layer*, J. G. Ohanneson . . .'' There was in that codicil, as in the codicil in the present case, many other statements which ordinarily would not be set forth in a testamentary document.

In the heirship proceedings in the Sargavak case the court refused to permit the heirs to introduce any extrinsic evidence to show that the intent was as claimed by the heirs. The heirs asserted, as they do in the present case, that the codicil was ambiguous on its face. The court there held at pages 318-319 as follows:

''The statutes on the subject of the admissibility of extrinsic evidence in the construction of wills provide: 'A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will.' (Prob. Code, § 104.) 'When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations.' (Prob. Code, § 105.) . . . While declarations of the testator before and after the execution of the will are admissible for the purpose of ascertaining

the intent with which the instrument was executed, they are not admissible, 'for the purpose of proving the meaning the testator attributed to specific provisions of the admitted will. [Citations.] ''Such . . . declarations of intent to make a will are admissible when the attempt is not to explain an ambiguity but to show the testamentary character of a letter.'' ' (*Estate of Sargavak, supra,* 35 Cal.2d 93, 97 [216 P.2d 850, 21 A.L.R.2d 307].)''

It was further stated at page 320:

''Decisive on the admissibility of extrinsic evidence is, therefore, the presence or absence of uncertainty in the codicil. That there is no uncertainty is plain considering the codicil and rules of construction applicable.'' (*Estate of Sargavak,* 41 Cal.2d 314, 320 [259 P.2d 897].)

The bequest language in the case before us is: ''I will all my property & Security to said person Izora H. Pflug.'' It seems that such a language is positive and unequivocal. The rules of the Salmonski and Sargavak cases are approved in *Estate of Neubauer,* 49 Cal.2d 740 [321 P.2d 741].

We believe that the formal will and the codicil when considered as a whole disclose that the testator by his codicil revoked the dispositive provisions of the formal will and substituted in their place a proviso to the effect that he willed all of his property to Izora H. Pflug. The trial judge was correct in refusing to permit the introduction of any extrinsic evidence under the circumstances.

The decree is affirmed.

Lillie, J., and Drapeau, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.