[Civ. No. 27391. Second Dist., Div. One. April 20, 1964.]

Estate of STELLA RUST DELANY, Deceased. CORAL HOME, Claimant and Appellant, v. BETTY KNAPP et al., Claimants and Respondents.

Marcus L. Roberts for Claimant and Appellant.

James L. Grubbs, George W. Collins and Arnerich, Del Valle & Sinatra for Claimants and Respondents.

WOOD, P. J.—This is an appeal from a portion of an order determining the interests in decedent's estate.

Stella Rust Delany, who died June 16, 1961, left an estate of the approximate value of $67,000, which included a dwelling house (the family home) and the furniture therein at Avalon, California.

Her formal typewritten will of January 16, 1961, (apparently prepared by an attorney), and a formal typewritten codicil of February 16, 1961, (apparently prepared by an attorney), and a holographic codicil of June 15, 1961, were admitted to probate. No question is presented herein as to the due execution or genuineness of those documents.

The will states: She is a widow. She leaves no issue of her body. She gives her diamond ring to her sister Betty Knapp. She gives the following sums of money to the following named persons: $5,000 to Coral Home; $5,000 to Jim Johnston; $1,000 apiece to: Dick Peck, Jo Ann Lawson, Howard Trudeau, and Zackary Peck. $500 apiece to Donald Doss and John Moore. $2,000 to St. Catherine's Church at Avalon. $2,500 to the Jesuit Seminary Association, on the condition that it is not awarded anything in a certain lawsuit. $3,500 to Marcus L. Roberts. She gives to Betty Knapp and Gladys Grayling her house in Avalon, together with all the furniture therein, to share and share alike. She gives all the residue of her estate to her sister Betty Knapp. If the lawsuit should not be settled before her demise, she does not want any part of whatever recovery is thereafter made to become part of the residue of her estate, but she thereby gives it to some Catholic charity designated by the executor of her will. She directs that all estate and inheritance taxes be paid out of the residue. She nominates Marcus L. Roberts as executor.

The first codicil states: The gift of $3,500, contained in her

will, to Marcus L. Roberts is increased to $4,000. The gift of the residue of her estate, contained in her will, is thereby amended, and she gives of said residue, to Coral Home, all of her personal effects, except the diamond ring given to Betty Knapp, but all the residue of her estate she gives to Betty Knapp and Coral Home, to share and share alike. (This codicil contains the same provision which is in the will regarding the recovery from the lawsuit not becoming a part of the residue.) In the event any part of any gift to charity is invalid, then she gives such invalid portion to Loyola University. In all other respects, with the exception of the effect of the codicil, she expressly ratifies her will.

The holographic codicil is as follows:

> will -
> "A consol to my ~~wil~~ -
> I leave $10,000 to Coral
> Home for her loving care of
> me - $5,000 to Jim Johnston
> for his ~~eare~~ loving care of
> Oliver - $5,000 to Marc
> Roberts for all his interest
> & help - $5,000 to the six
> God children.
> All my personal things
> & balance of my estate
> to Coral Home to do as
> She see fit -
> Stella Rust Delany
> ~~Jan~~ June - 15th 1961."

On December 19, 1961, Coral Home filed her petition for determination of interests in the estate, wherein she asserted that she is entitled to all of the estate, except the specific legacies of $5,000 to Jim Johnston, $5,000 to Marcus L. Roberts, and $5,000 to the six godchildren.

On January 4, 1962, Marcus L. Roberts filed his statement claiming that he is entitled to $5,000. He also stated therein his theory, as executor, regarding the distribution of the estate, which theory was as follows: (1) The codicils have no effect upon the provisions of the will regarding decedent's status as a widow, without issue; or regarding payment of taxes; or regarding the nomination of an executor. (2) The holographic codicil does affect the will and the typewritten codicil in that the holographic codicil virtually rewrites the will and the typewritten codicil, except as to the matters last

above mentioned herein (*re* status of decedent, taxes, and nomination of executor). That after payment of the three bequests of $5,000 each (to Johnston, Roberts, and godchildren), all the balance of the estate goes to Coral Home. (He also states therein an alternative method of distribution in the event his first-mentioned method is incorrect—but it is not necessary to state it here.)

On January 22, 1962, Gladys Grayling, sister of decedent, filed a statement of her claimed interest in the estate, wherein she asserted that pursuant to the will as republished in the codicils, decedent devised to her sisters, Betty Knapp and Gladys Grayling, her house at Avalon, together with the furniture in the house; that the codicils did not revoke or modify the provision in the will giving the house and furniture to them, or revoke or modify the provision giving the diamond ring to Gladys; that the holographic codicil created ambiguities and that Gladys would be entitled to introduce extrinsic evidence regarding the interpretation of the codicil.

On January 22, 1962, Betty Knapp, sister of decedent, filed a statement of her claimed interest in the estate, wherein she asserted that under the will she and Gladys were entitled to the Avalon house and furniture. (She also said that the first codicil provided that she would have one-half of the residue.)

The decree determining interests provided: that decedent left a will and two codicils which have been duly admitted to probate, and by the terms of the will and codicils the whole of the estate is devised and bequeathed to Coral Home. $5,000 to Jim Johnston. $5,000 to the six godchildren in equal shares. $2,000 to St. Catherine's Church. $5,638 to the executor for distribution to some Catholic order. $5,000 to Marcus L. Roberts. The Avalon house and furniture to Betty Knapp and Gladys Grayling. The residue of the estate to Coral Home, but out of the residue all taxes are to be paid.

Coral Home appeals from that portion of the decree which determines (1) the right of Betty Knapp to the diamond ring, and (2) the right of Betty Knapp and Gladys Grayling to the Avalon house and furniture. (The notice of appeal also states that she appeals from the part determining the right of the church to $2,000, and the right of the executor to $5,638 for distribution to a Catholic order. No point is made on appeal regarding these last two items.)

Appellant contends that the holographic document was a complete will in itself with respect to the disposition of the assets, but was a codicil with respect to administrative provi-

sions. She argues to the effect that the designation of the holographic document as a codicil was not determinative that it was a codicil; that the provision therein that ''All my personal things & balance of my estate to Coral Home'' was a disposition of the residue of the estate to Coral Home, after payment of the specific legacies mentioned in the holographic document. In other words, she asserts in effect that since the holographic document did not specifically dispose of the house and furniture and ring (which things had been given specifically in the will and first codicil to Betty and Gladys), the expression ''balance of my estate'' would include those things in the residue given to Coral—with the result that Betty and Gladys (decedent's sisters) would receive nothing and that Coral (the friend) would receive the portions which theretofore (in the will and first codicil) had been given to the sisters.

In support of such argument she cites cases wherein it has been held that provisions in holographic documents, purporting to be codicils, were in effect complete dispositions of the assets of the estate. One of the cases so cited is *Estate of Holmes,* 191 Cal.App.2d 285, 288 [12 Cal.Rptr. 629], wherein the holographic document stated in part: ''I will all my property & Security to said person Izora H. Pflug.'' Another of those cases is *Estate of Wiemer,* 209 Cal.App.2d 7, 9 [25 Cal.Rptr. 693], wherein such document was entitled ''Will,'' and it stated in part: ''If I should die suddenly I want Maud to have 10,000 Tommy—Lindy the rest of my property. ...'' Other cases wherein it has been held in effect that a subsequent holographic document was a complete disposition of the assets are: *Estate of Salmonski,* 38 Cal.2d 199, 204 [238 P.2d 966], stating, ''devide everything that belongs to me''; *Estate of Cuneo,* [1]60 Cal.2d 198 [32 Cal.Rptr. 409, 384 P.2d 1], stating, ''She and Clara will be the owners of everything I possess''; and *Estate of Benson,* 62 Cal.App.2d 866, 868 [145 P.2d 668], stating, ''all of my estate.'' It appears that terminology of the subsequent documents in the above mentioned cases referred to the entire estate and was inconsistent with the testamentary plan indicated in prior documents.

■ ''A will must be construed according to the intention of the testator as expressed therein, and this intention must be given effect if possible. ■ Each case depends on its

[1]The *Estate of Cuneo* was cited by appellant as (Cal.App.) 28 Cal. Rptr. 430, but a hearing was granted therein.

own particular facts. . . ." (*Estate of Stadler*, 177 Cal.App. 2d 709, 711 [2 Cal.Rptr. 515].)

In the present case the decedent made a formal witnessed will in January, wherein she gave her ring to her sister Betty; gave certain amounts of money to nine persons, including Coral Home (and gave amounts to a church and a church association); she gave the Avalon house and furniture to her sisters, Betty and Gladys; and then all of the residue of her estate was given to Betty.

A month after the will was made, the decedent made a formal witnessed codicil, wherein she increased the gift to Marcus L. Roberts to $4,000 (from $3,5000 as stated in the will); and she stated that she was amending the provision as to residue, and that "out of said residue" she gave to Coral Home all of decedent's personal effects, except the ring "given to my sister, Betty Knapp," but all the residue of her estate she gave to Betty Knapp and Coral Home, to share and share alike. In this codicil no express reference was made to the Avalon house or furniture, or to the bequests of money in the will to the eight other persons (other than Mr. Roberts)—but there was the general statement that in other respects she ratified the will.

About four months after she made the first codicil (i.e., June 15, the day before she died), the decedent made the holographic document involved here. At the beginning of it, there are the words, "A consol to my will—." Then it states that she leaves $10,000 to Coral Home—$5,000 to Jim Johnston—$5,000 to Marc Roberts—$5,000 to the six godchildren. "All my personal things & balance of my estate to Coral Home."

This document, after stating that it is a codicil to her will, increases the money bequest to Coral Home to $10,000 (from $5,000 as stated in the will); increases the bequest to Marcus Roberts to $5,000 (from $4,000 as stated in the first codicil); and changes the bequest to the six godchildren by giving $5,000 to them (in equal shares, instead of giving four of them $1,000 each and two of them $500 each, as stated in the will). The bequest of $5,000 to Johnston was not changed but was restated therein. There was no reference therein to the Avalon house or furniture which were given, under the will, to her sisters, Betty and Gladys; nor was there any reference to the ring which, under the will, was given to Betty.

With reference to the provision in the holographic document regarding the residue, a question is whether the balance or residue there referred to is the portion of the state

remaining after distribution of the specific gifts designated in the will and the two other documents, or is the portion remaining after distribution of the specific gifts designated only in the holographic document. ██ She stated at the beginning of that document that it was a codicil to her will. Such a designation indicates an intention to amend the will and not to revoke it. (See *Estate of Iburg*, 196 Cal.333, 334 [238 P. 74].) In the original will, as above shown, she gave the residue to Betty Knapp. In the first codicil, after she had said that she was amending the ''gift of the residue,'' she gave to Coral Home ''out of said residue'' all of her personal effects except her ring, and then she gave all of the residue to Betty Knapp and Coral Home in equal shares. Thus, it would seem that, as of the time the first codicil was made, she regarded the residue as that portion which remained after distributing all the specific gifts mentioned in the will and first codicil, even though the Avalon house and furniture were not mentioned in that codicil. It is to be noted that, under the first codicil, Coral Home was to receive one-half of the residue after distribution of the specific gifts of the original will and the first codicil. In the holographic document, which she designated as a codicil, she increased the money gift to Coral Home by doubling the amount specified in the original will (increasing it from $5,000 to $10,000) ; and after increasing other specific gifts and again not mentioning the Avalon house and furniture, she gave to Coral Home all of the residue (as distinguished from the one-half stated in the first codicil). It would seem that the words in the holographic document giving the residue to Coral Home, when no mention was there made of the house and furniture, were used in the same sense as the similar words were used in the first codicil giving the residue to Betty Knapp and Coral Home, when no mention was there made of the house and furniture. It would seem that the provision in the holographic document giving the residue to Coral Home was a continuation of the testamentary plan indicated by the first codicil, i.e., that even though some of the specific gifts of the original will were not mentioned in the first codicil, the residue would be the portion remaining after the specific gifts of the original will and the codicil were distributed. It is to be noted further that the holographic document provided for a specific bequest of $10,000 to Coral Home. Such a provision would serve no useful purpose if, as appellant Home argues herein, the residuary clause gives all of the estate to appel-

lant, except the three specific bequests of $5,000 each mentioned in the holographic document. (As above stated, the approximate value of the estate was $67,000.) The holographic document did not expressly state that any provision for a specific bequest was revoked. If, as appellant Home argues, the holographic document is not a codicil, then it would appear that decedent intended (not expressly but by implication) to revoke not only the provisions of her will for specific gifts to her sisters, but also to revoke the provisions for gifts to her church and the church society or association. In *Estate of Shirley,* 107 Cal.App. 267, 269 [290 P. 302], it was said: "The different parts of a will, or of a will and codicil, shall be reconciled, if possible, and where a bequest has been once made, it shall not be revoked, unless no other construction can be fairly put upon the language used by the testator."

The trial judge stated in his memorandum decision that the holographic document is a codicil and that it must be interpreted with the will and codicil to which it becomes a part; and that reading the three documents together, "distribution should be as follows: ... [Here a statement is made providing for distribution as set forth in the decree hereinabove referred to.]"

The trial judge properly determined that the holographic document is a codicil. ▪ The residue referred to in the holographic codicil is the portion of the estate remaining after distribution of the specific gifts designated in the will and codicils. The judge properly determined the interests in the estate.

A further contention of appellant is that the court erred in not receiving extrinsic evidence as an aid in interpreting the documents. It cannot be said that the court was required to receive such evidence. The court did not err in denying appellant's offer to present extrinsic evidence.

The portion of the order from which the appeal is taken is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 18, 1964, and appellant's petition for a hearing by the Supreme Court was denied June 16, 1964.