[Civ. No. 21497.    First Dist., Div. One.    June 15, 1964.]

Estate of RICHARD L. RYDER, Deceased. JOSEPH M. PAPER, as Executor, etc., Petitioner and Respondent, v. MARJORIE VIRGINIA BORCHARDT, Objector and Appellant; THE SAN FRANCISCO PROTESTANT ORPHANAGE et al., Claimants and Respondents.

Tremaine & Shenk, John W. Shenk and Jerome J. Jahn for Objector and Appellant.

Joseph M. Paper, in pro. per., for Petitioner and Respondent.

Slack & Zook, John E. Troxel, Knight, Boland & Riordan, John H. Riordan, Peart, Baraty & Hassard and Joseph Rogers for Claimants and Respondents.

BRAY, P. J.—Appellant Marjorie Virginia Borchardt appeals from the order settling first and final account and decree of distribution.[1]

### QUESTIONS PRESENTED.

1. Did testator intend that the property in his estate pass to the charities named in his will in the event the primary beneficiary predeceased him? Yes.

2. Did the execution subsequent to the death of the primary beneficiary republish the will so as to attempt an invalid bequest to a deceased person? No.

### RECORD.

On March 5, 1958, testator Richard L. Ryder executed his "Last Will and Testament." The relevant provisions thereof are:

"   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

---

[1]There was an amended order settling first and final account and report of executor and decree of final distribution entered the day after the above mentioned order. This merely corrected a typographical error and is not relevant to our inquiry. Appellant appealed from both orders. We will treat both orders as one.

"*THIRD*: I hereby give, devise and bequeath all of my estate, whether real, personal or mixed and of whatever kind or character and wheresoever the same may be situated and however held, and all increases in value or capital of which I may die seized or possessed, or in which I may have any interest or right of testamentary disposition, to my trustee, hereinafter named, in trust, however, subject to the following uses, terms conditions and limitations:

"(a) ... [Net income to sister Emily Murphy for life.]

"(b) ... [Trustee's discretion to expend principal for benefit of sister.]

"(c) ... [Spendthrift clause.]

"(d) ... In the event that my sister, EMILY MURPHY, should predecease me, then and in that event I direct that the trust herein created shall be of no force or effect whatsoever.

"(e) ... [Further provision concerning trustee's discretion.]

"(f) ... [Source of payment of expenses of the trust.]

"(g) Upon the death of my sister, EMILY MURPHY, the trust herein created shall immediately end and terminate and I direct that all of the property which shall then constitute my trust estate shall be distributed and paid as follows:

"(1) One-third thereof to the SAN FRANCISCO PROTESTANT ORPHANAGE . . .

"(2) One-third thereof to the AMERICAN CANCER SOCIETY ...

"(3) One-third thereof to the SAN FRANCISCO CHAPTER OF THE NATIONAL FOUNDATION FOR INFANTILE PARALYSIS . . .

"*FOURTH*: I have intentionally omitted to make any provisions herein for my niece, MARJORIE BORCHARDT, and my nephews, GRANT THORN and WILLIAM MURPHY.

"*FIFTH*: . . . [Any person contesting the will shall receive only $1.]

"*SIXTH*: . . . [No interest paid on any of the legacies.]

"*SEVENTH*: . . . [Nominates Joseph Paper both as executor of the will and as trustee.]"

Emily Murphy died February 12, 1961. On March 8, 1961, testator executed the first codicil to the will. It added a bequest to one Gertrude Edwards to take effect if his disposition to the named charities should prove invalid. He expressly ratified and confirmed in all respects the prior will.

On June 16, 1961, he executed a second codicil to the will. This revoked the bequest to Gertrude Edwards and added four substitutional legatees who were to take if "by reason of

any provision of law limiting restricting or invalidating gifts to charities all or any portion of the gifts to the charities" named in his will are invalid.

Again, he expressly ratified his prior will in all respects.

On July 6, 1962, testator died.

By its decree of distribution the probate court ordered distribution of the residue of testator's estate to the three charities named in the will pursuant to the will and codicils.

### 1. TESTATOR INTENDED CHARITIES TO TAKE.

Appellant contends: (a) that by the express provision of paragraph THIRD (d) of the will which reads "In the event that my sister, EMILY MURPHY, should predecease me, then and in that event I direct that the trust herein created shall be of no force or effect whatsoever" the trust created by the will terminated upon her death. Therefore, says appellant, under paragraph THIRD (g) which provides, in part, that "Upon the death of my sister ... the trust herein created shall immediately end and terminate and I direct that all of the property which shall *then constitute my trust estate* shall be distributed ..." to the three named charities (italics added), the charities could not take because there was *then* no trust estate in existence, it having terminated on Emily's death. Appellant further contends that by the above language the testator indicated that he did not desire to give his *entire* estate to the charities but only that remaining after satisfaction of the life estate created for his sister. It therefore follows, appellant concludes, that the gift to the charities failed entirely and a total intestacy arose.

(b) Appellant contends, secondly, that the execution of the codicils after Emily's death effected a republication of the will and was an invalid attempt to create a trust in favor of a dead person. Therefore the trust fails as a matter of law and the estate passed by intestate succession.

Appellant further contends that provision FOURTH expressly omitting appellant from participating under the will does not prevent her from succeeding to the estate because of the alleged intestacy resulting as contended in (a) and (b) above.

*Alleged Failure of the Gift.*

A will is to be construed according to the intention of the testator. " 'All other rules of construction are subordinate to this cardinal rule and in its application presumptions

are to be indulged which will prevent entire or partial intestacy.' " (*Estate of Karkeet* (1961) 56 Cal.2d 277, 281 [14 Cal.Rptr. 664, 363 P.2d 896]; *Estate of Gansner* (1963) 222 Cal.App.2d 390, 393 [35 Cal.Rptr. 213].) This principle is embodied in Probate Code section 101 which provides: "Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument. A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."

Considering the will in the absence of the codicils, it evidences testator's clear intent to provide for his sister during her life and thereafter to pass the remainder of his estate to the named charities to the exclusion of appellant herein. The introductory language to paragraph THIRD creates the trust subject to the conditions thereafter set forth. Subparagraph (a) makes the income of the trust payable to testator's sister for her life. By subparagraph (d) the testator clearly expressed his intent that if his sister should predecease him the *trust* should terminate. If that were all the will contained it might well be concluded that because the trust by its terms ended without any intended disposition of the property being manifest, the property subject to the trust must pass by intestacy.

By subparagraph (g), however, testator provided that whenever his sister died, the trust shall terminate. This provision can be read consistently with that in subparagraph (d). Immediately following the provision for termination of the trust and in the same subparagraph, testator directs that "all of the property which shall then constitute my trust estate" be distributed to the named charities. Since testator provided that the trust terminate before he directed the distribution of the property, it may be inferred that the distribution directed was intended to be of that property which until the termination of the trust had been subject to it. Subparagraph (g) does not direct testator's "trustee" as trustee to distribute the remainder. Rather, it simply directs that "all of the property . . . shall be distributed as follows: . . ." The property was to go to the charities remaindermen not through the trustee but through the provision of the will. Thus whenever the trust ended the property was to be distributed according to the provisions of subparagraph "(g)" free of the trust. The conclusion that the testator intended to benefit the named charities to the exclusion of

appellant is further evident from paragraph FOURTH wherein he expressly omits to provide for appellant herein by name.

In *Estate of Gregory* (1909) 12 Cal.App. 309 [107 P. 566], the testator left a will which disposed of various portions of his personal property. The will expressly provided that the appellant therein was to receive five dollars. By paragraph 5, the testator purported to leave "All the rest, residue and remainder of my estate" to a trustee to hold the property in trust for his wife during her life. Upon her death, the trustee was to "immediately pay over and deliver all of said trust fund and residue of my estate" to two named grand-children, to whom "I hereby give, devise and bequeath all of said residue of said trust fund in equal share ... forever." (Pp. 310-311.) The testator's wife predeceased him and appellant therefore attacked the will upon the ground that the trust clause was therefore inoperative and void, and that there being no residuary provision in the will except for that set forth in the trust clause, the testator must be held to have died intestate. The trial court granted distribution to the named grandchildren. The appellate court affirmed the distribution. The real question, the court said, was whether the will was susceptible of the construction that the testator intended to dispose of his whole estate. "The fact that the wife never lived to become the beneficiary of the trust created in her favor is no reason for holding that the subsequent provision of the will directing the disposition of the fund should be defeated. 'In the interpretation of wills, constructions which lead to intestacy, total or partial, are not favored; and such an interpretation should, if possible, be placed upon the provisions of the will as will prevent intestacy, especially where the will evinces an intention on the part of the testator to dispose of his whole estate.' [Citations.]" (P. 312.)

"The testator's wife having died before him, she never became entitled to the trust fund. The provision as to her lapsed, but as there were residuary legatees designated in the will, the property out of which the trust fund was to be constituted must go to them, and not descend to the heirs." (*Estate of Gregory, supra,* 12 Cal.App. at p. 312.)

In *Estate of Lawrence* (1941) 17 Cal.2d 1 [108 P.2d 893], the testator left a will in which, after providing for his debts, he directed his executors to purchase an annuity for one Black with the money and property in his estate. In the event of a refund of principal, "I give, devise and bequeath" such money to two named charities and to other

named persons share and share alike. Black predeceased the testator. The testator's heirs at law petitioned the probate court for distribution of the entire estate to them on the ground that the remainder to the charities was contingent and therefore was destroyed by the failure of the intervening life estate. The respondent charity contended that death of the legatee of a limited interest does not defeat the interest of the remainder under section 140, Probate Code.[2] The Supreme Court held that the testator intended to provide for Black during his life, but that thereafter any of the estate remaining was to go to the named charities. On Black's death, the gift to him lapsed and the residue of the estate thereupon became vested in the charities. The court cited *Estate of Gregory, supra,* with approval, and noted at page 8: "No particular mode of expression is necessary to constitute a residuary legatee. It is sufficient if the intention be plainly expressed in the will that the surplus of the estate, after payment of debts and legacies, shall be taken by a person there designated. [Citations.] ...

"That there might be no principal remaining from this specific annuity upon Black's death likewise would not defeat the interest of the charities, because the law is clear to the effect that the circumstance that all of the *corpus may* be consumed in providing for the life tenant does *not* make the remainder a contingent one. [Citations.]"

In *Estate of Rowley* (1954) 126 Cal.App.2d 571 [272 P.2d 911] (hearing denied), the testator by a holographic will left his property to a corporate trustee for the benefit of his wife if she survived him. At her death the trustee was to close the estate and close the trust. By separate provisions, the testator made certain specific bequests to named legatees and then left the residue of his estate to a named charity. The testator's wife predeceased him and the appellants, first cousins, petitioned for distribution as nearest kin. They contended that the failure of the wife to survive the testator caused the remainders to fail, creating an intestacy. Again citing *Estate of Gregory supra,* the court held that it was evident that the testator intended to provide for his wife if she survived him and after her death to provide for a complete distribution of his property whether her death occurred before or after that of the testator.

---

[2]Prob. Code, § 140, provides: "The death of a devisee or legatee of a limited interest before the testator's death does not defeat the interest of persons in remainder who survive the testator."

In *Estate of McCurdy* (1925) 197 Cal. 276 [240 P. 498], there was a situation somewhat similar to that in the case at bench. Gertrude McCurdy, the testatrix, executed a will in which she left all her property to her niece Louise Hart. Later she executed a codicil thereto in which she revoked the bequest to Louise, and in lieu thereof, bequeathed all her property to a trustee in trust to pay the income to Louise for life. The codicil provided that upon Louise's death the "trust shall cease and terminate and the entire *corpus* and unexpended income" shall be paid by the trustee "in the manner and in the proportions as the said Louise E. Hart shall by her last will and testament provide, and in default thereof to her heirs at law." (Pp. 280-281.)

Louise predeceased Mrs. McCurdy, leaving a will in which she bequeathed all of her property to her aunt Mrs. McCurdy. In the latter's estate Mrs. McCurdy's heirs contended that by reason of the predecease of Louise, the trust provided in the McCurdy codicil lapsed and that therefore an intestacy resulted and they were entitled to take by succession. Thus, the contention was similar to that in our case, namely, that as the trust failed because the beneficiary was not alive at the time of the testatrix' death, the trust failed and intestacy resulted.

The court first considered the intention of the testatrix as disclosed by the will and codicil. It held that her clear intention was to make the niece the sole devisee and legatee of her estate, and in the event that the testatrix should predecease the niece and the latter should die intestate, all of the property would pass to the heirs of said niece, or if the niece should leave a will the property would pass to the persons designated by the niece. As in our case, it was contended that the provision that on the death of Louise, the trust "shall cease and terminate" caused intestacy because of the fact that Louise predeceased the testatrix. Concerning this contention the court said (p. 286) : "It is the claim of appellant that the whole trust scheme of the codicil was invalid and must fail. As a matter of fact, the whole trust scheme was dissipated upon the death of the owner of the equitable life estate, to wit, Louise E. Hart, the niece of the testatrix. But such a contingency could not defeat the interest of the remainderman. (§§ 741, 742, Civil Code ...)"

The court held that the failure of the trust did not invalidate that portion of the will which provided that upon the termination of the trust the property should go to the

niece's heirs at law, the niece not having made any designation in her will.

## 2. EFFECT OF CODICILS.

The two codicils executed by testator after the death of his sister were plainly to prevent the gifts to charity being invalid, as violative of section 41, Probate Code. At the time of the execution of these codicils the trust had not and would not thereafter take effect. Nevertheless, by these codicils the testator affirmed his prior disposition to the charities. These codicils indicate distribution to the named individuals without mention of any trust. Presumably, therefore, this distribution was to be effected by the executor named in the will. These acts indicate both a knowledge of and a desire to avoid a possible intestacy and to effect a distribution to the charities. This conclusion is further reinforced by his express omission of appellant niece and his nephews as beneficiaries.

In *Estate of Matthews* (1917) 176 Cal. 576 [169 P. 233], the testatrix by her will left money to her daughter. The daughter died before the testatrix, survived by a son. After the daughter died, testatrix executed a codicil by which she ratified her original will. The court held that the will was republished as of the date the codicil was executed. Therefore, since the beneficiary was dead at that time, the attempted gift was to a dead person and was void. The son thereby took a much larger share of the estate as a pretermitted heir. However, the court there noted the rule to be as follows: " 'The general doctrine is well settled that a codicil executed with the formalities required by statute for the execution of wills operates as a republication of a will, so far as it is not altered or revoked by the codicil, *if the intention of the testator is not thereby defeated*; and the two are to be regarded as but one instrument, speaking from the date of the codicil.' ... True, it is subject to the exception that *the intention of the testator or testatrix must be preserved, if possible . . . ,* and courts have in many instances refrained from applying the rule regarding republication by codicil with all the severity that would attend the interpretation of a new will by which all previous wills had been set aside." (Pp. 577-578; italics added; accord: *Estate of Challman* (1954) 127 Cal. App.2d 736, 740-741 [274 P.2d 439]; 2 Page on Wills (1960) § 23.11, pp. 588-590, § 23.18, pp. 598-599; see generally 53 Cal.Jur.2d, Wills, §§ 262-263, pp. 518-519.)

In *Estate of Salmonski* (1951) 38 Cal.2d 199, 210 [238

P.2d 966], the court noted by way of dictum: "While the will and codicil together constitute the decedent's last will in testamentary disposition of his estate, they will not be regarded as a single instrument and as if both had been executed at the time of making of the codicil where the manifest intention of the testator requires otherwise." (Accord: *Estate of Wiemer* (1962) 209 Cal.App.2d 7, 12 [25 Cal.Rptr. 693]; *Estate of Holmes* (1961) 191 Cal.App.2d 285, 292 [12 Cal. Rptr. 629].)

It seems apparent from the cases that the doctrine of republication is not applied where it will defeat a testator's most probable intention therein. (See *Estate of McCauley* (1903) 138 Cal. 432, 438 [71 P. 512]; *Estate of Herbert* (1955) 131 Cal.App.2d 666, hearing denied [281 P.2d 57]; 2 Page on Wills (1960) § 23.18, p. 598.) The testator's intention is clearly manifest from the will and from the codicils thereto. The trial court's decision granting distribution to the charities named in the will was correct.

By his will testator intended his estate in the event of the death of his sister, to go to the three charities. By the codicils he reaffirmed that intention. Even assuming, as appellant contends, that by republication, the gift to his sister had lapsed by her death, there was nothing to pass by intestacy. The codicils and the will read together indicate testator's clear intent to make the charities direct and immediate beneficiaries of his bounty at his death. Testator, by executing the codicils including the lapsed gift and by reiterating his intention to exclude his next of kin, his nephews and his niece, clearly did not intend to die intestate. ■ As said in *Estate of Lefranc* (1952) 38 Cal.2d 289, 296 [239 P.2d 617], quoting from *O'Connor* v. *Murphy* (1905) 147 Cal. 148, 153 [81 P. 406]: "The making of a will raises a presumption that the testator intended to dispose of all his property. Residuary clauses are generally inserted for the purpose of making that disposition complete, and these clauses are always to receive a broad and liberal interpretation, with a view of preventing intestacy as to any portion of the estate of the testator, and this general rule is in harmony with the declaration of our code that the provisions of a will must be construed, if possible, so as to effect that purpose."

The court properly distributed the property remaining in the estate to the three charities named in the will.

The order and decree are affirmed.

Sullivan, J., and Molinari, J., concurred.